UNITED STATES *v.* CORNELL STEAMBOAT COMPANY.

APPEAL FROM THE COURT OF CLAIMS.

No. 265.  Argued January 28, 29, 1925.—Decided March 2, 1925.

Tug-boats were chartered to the United States for a per diem for each and every day of the charter period, the owner agreeing to furnish everything for them, except coal and water, which were to be furnished by the United States; the Government had the entire use of the boats and they were subject at all times to the orders

and directions of its officers. *Held,* a demise; and that the United States was not entitled to make deductions from the owner's monthly bills for loss of service caused by short crews, ill condition, delay in taking on supplies, and by the sinking of one of the boats, which was raised and repaired by the owner. P. 286.

58 Ct. Clms. 497, affirmed.

APPEAL from a judgment of the Court of Claims allowing the claimant, appellee, recovery of deductions made by the United States from the bills rendered by the claimant under a charter of tug-boats.

*Mr. J. Frank Staley,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the briefs, for the United States.

The rule announced in this Court in *New Orleans-Belize S. S. Co.* v. *United States,* 239 U. S. 202, determines that the charters of the tugs in this case were contracts for hire and did not constitute a demise. See also *The Spokane,* 294 Fed. 242; *Bramble* v. *Culmer,* 78 Fed. 497; *Clyde Commercial S. S. Co.* v. *West India S. S. Co.,* 169 Fed. 275.

The charters gave the use of tugs, some for a day of 12 hours, others for a day of 24 hours, at a daily rate. The letting for a 12-hour day is inconsistent with a demise of the boat.

The owner, by express terms, agreed to supply everything in connection with the maintenance and operation of the tugs, with the exception of coal and water, which the Government was to furnish. The owner undertook to provide and pay the crew. The charterer was without authority to nominate or select the officers and crew or to discharge or discipline them. The owner provided subsistence for the crew, ship's stores, including oil for engines and machinery, assumed all responsibility for keeping the tugs equipped and in proper running order and condition without limitations of any kind.

The practice of submitting accounts monthly, clearly denies that the Government considered the agreement a demise of the vessel. To the contrary it insisted that the owner properly man and equip its tugs as provided and it denied the right to discipline the crews for lax attention in the handling of the tugs; rather it imposed upon the tugboat owner penalties for its failing to provide full crews and to discipline the officers and crew, which it regarded owner's duty.

Again when the *Ira Hedges* sank, the owner at its own expense raised the vessel and repaired it. This it was bound to do by the terms of the charter. If the charter is to be read as a demise of the tugs, such loss would have been borne by the Government as *pro hac vice* owner, and not by the owner.

It is common knowledge that tugs employed in harbor service keep a log of the movements of the tug and the services they perform covering every day, whether the tugs are in the service of the owners or if they are hired to others. The fact that such logs were kept under the direction of the Army Transport Service can not be considered a factor determining the arrangements a demise.

Courts are not inclined to regard the contract as a demise of the ship if the end in view can be accomplished without the transfer of the vessel to the charterer. *Reed* v. *United States,* 11 Wall. 591. See *Leary* v. *United States,* 14 Wall. 607; *Donald* v. *United States,* 39 Ct. Clms. 357; *Plant Investment Co.* v. *United States,* 45 Ct. Clms. 374. *United States* v. *Shea,* 152 U. S. 178, distinguished.

*Mr. Robert S. Erskine,* with whom *Mr. John M. Woolsey* was on the brief, for appellee.

The judgment rests upon findings of fact. These cannot now be questioned by the Government.

The surrounding circumstances, as shown by all the facts, in each case, determine whether or not a charter is a demise. *United States* v. *Shea,* 152 U. S. 178; *Leary* v. *United States,* 14 Wall. 607.

The findings here support the ruling that the charters demised the tugs to the Government. *The Charlotte,* 285 Fed. 84; s. c. 299 Fed. 596; *Hahlo* v. *Benedict,* 216 Fed. 303; *The Del Norte,* 119 Fed. 118.

There are three classes of charter parties, in two of which the vessel is always let or hired for an agreed period of time. (a) a demise; *The Barnstable,* 181 U. S. 464; (b) a time charter, or ordinary hiring of the vessel, not constituting a demise; *S. S. Co.* v. *West India S. S. Co.* 169 Fed. 275; (c) voyage charter, or contract of affreightment; *Texas Co.* v. *Hogarth Shipping Co.* 256 U. S. 619.

The demise and ordinary time charter are alike in that, under both forms, the vessel is let or hired for an agreed period of time, and hire is to be paid, at a specified rate, from the beginning to the end of the charter period, unless there is some express exception providing for suspension of hire.

The principal difference between the two forms is that under a demise the ship's officers and crew become, even in matters of navigation and care of the vessel, the agents of the charterer, while under an ordinary time charter the officers and crew remain the agents of the owner with respect to the navigation and care of the ship.

The third class referred to is obviously not involved in the case at bar.

The error in the appellant's argument lies in its failure to recognize the fact that even if the charters here did not constitute a demise (which the lower court held they did), they must still fall in the second class, as time charters; and, in either class, the contract is for the use of the vessels

for an agreed period of time, with the corresponding promise to pay hire from the beginning to the end of the agreed period.

Even under ordinary time charters, the law requires continuous payment of hire from beginning to end of the entire period, where the charters do not contain any exceptions. *Carver on Carriage of Goods by Sea* (6th Ed.), p. 741; *Scrutton on Charter Parties and Bills of Lading* (10th Ed.), 382; *Atlantic Fruit Co.* v. *Solari*, 238 Fed. 217; *The Santona*, 152 Fed. 516; *Havelock* v. *Geddes*, 10 East. 555; *Ripley* v. *Scaife*, 5 B. & C. 167.

In the absence of a specific exception in the contract, the only excuse which the charterer could offer for the cessation of hire, even under a time charter not constituting a demise, would be a frustration of the adventure. *The Frankmere*, 262 Fed. 819, 278 Fed. 139; *The Claveresk*, 264 Fed. 276; *The Isle of Mull*, 278 Fed. 131.

The Government cannot now support its position by a belated suggestion that it is entitled to an off-set on account of alleged negligence of the owner of the tugs

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

This proceeding was instituted to recover the sum of deductions made by the United States from monthly bills rendered by appellee for the hire of tugs.

During 1917 and 1918, under informal charters evidenced by letters, appellee hired twelve tugs to the United States for use in and about New York Harbor. The specified price was " for each and every day of the charter period," and the owner agreed " to furnish everything for these tugs with the exception of coal and water which you are to furnish."

The vessels reported for service in accordance with the several contracts and the plaintiff rendered monthly bills

at the per diem rate stated therein.    Those for December, 1917, were paid as rendered.    Thereafter deductions were made which amounted in all to $24,822.48.    They were based upon the vessels' logs, kept by their captains and engineers as directed by the Army Transport Service, and were entered if a boat reported with a short crew, or not in condition to perform the service required, or if too long a time was consumed in taking on supplies.    The owner saved its rights through proper claims and protests.

While in the service of the United States the "Ira M. Hedges" sank.    It was raised and repaired by and at the expense of the owner, and was subsequently used by them. One of the challenged deductions was for loss of time incident to this accident.

"During the time when the tugs hereinbefore mentioned were in the service of the Government, the Army Transport Service had the entire use of the tugs and they were subject at all times to the orders and directions of the officers of the Government, and at no time during the period did the plaintiff have the use of and [it] did not in any way interfere with or direct the operations of the said tugs."

The United States maintain that the owner did not part with possession, command and navigation during the charter periods; that the charter was for service, and not a demise; and that consequently they rightly made deductions for the time the vessels were not at their disposal.

Relying upon the doctrine approved in *United States* v. *Shea*, 152 U. S. 178, the Court of Claims concluded that the charter amounted to a demise and that the deductions were not permissible.    It accordingly sustained the claim of the owner, appellee here.    Accepting the facts as found, we agree with that conclusion and affirm the judgment.

*Affirmed.*