Green, Judge,
delivered the opinion of the court:
Both the plaintiff and the intervenor seek to recover the value of the S. S. Fenimore which, while in the Government service under a charter contract and engaged in transporting-supplies to its Battle Fleet, was totally destroyed by fire and explosion.
The findings of fact show that the Hu*dson Navigation Company, being in possession of the S. S. Fenimore, chartered the vessel to the defendant. 'Subsequently receivers were appointed for said company by a court order. In succession, these receivers died and a new receiver was appointed 'who, since the commencement of this action by one of the original receivers, has been substituted as plaintiff herein. Finding XIV shows that by com eyances described therein the assets of the Hudson Navigation Company were transferred, first to the Assets Purchasing Corporation and afterwards by this last-named corporation assigned to the Hudson River Navigation Corporation, the intervenor herein. The title of the Hudson Navigation Company to the S. S. Fenimore appears to have been derived through a bill of sale executed in 1914 by the New York, Albany & Troy Transportation Line. In 1915 the Hudson Navigation Company executed a bill of sale covering the said steamship to the N. Y., A. & T. Line, which was duly registered; and in 1916 the N. Y., A. & T. Line executed a mortgage of the vessel to a trustee to secure an issue of $100,000 in bonds, which were delivered to and continuously owned by the Hudson Navigation Company. The effect of these transactions with the N. Y., A. & T. Line will be discussed hereinafter. At this point it is sufficient to say that the N. Y., A. & T. Line is not a party to the action. It is clear, therefore, that if- anyone is entitled to recover in the case it is the intervenor, the Hudson River Navigation Corporation, which, by reason of the conveyances above set forth, became the owner of the claim now set up against the Government, if such claim be a valid one.
To prevent confusion!, owing to the similarity of names, the Hudson Navigation Company, which executed the charter party or contract und,er which the Fenimore went into *302 the Government service, is referred to in some of the findings of fact and in some parts of this opinion as the “ H. N. Co.”
An important question in the case is whether the contract between the defendant and the Hudson Navigation Company constituted a demise or letting of the S. S. Fenimore or merely a contract for services. On this point the decisions are not in entire* harmony, and the earlier rule as laid down by the Supreme Court seems to have been somewhat modified by the later cases which we will consider.
The charter contract between the parties starts with an agreement “ to let ” the steamship and twice states that it was “ to be placed at the disposal of the charterers, * * * in such dock or at such wharf or place * * * as the charterers may direct,” and that “ the whole reach of the vessel’s holds, decks, and usual places of loading, and accommodations of the ship * * * shall be at the charterers’ disposal,” and “ that the captain (although appointed by the owners) shall be under the orders and directions of the charterers as regards employment, agency, or other arrangements.” This last statement «with reference to the captain is not very clear, but in connection with the remainder of the contract, we think it means that the defendant was to have general authority over the captain. There is also a provision that the steamer was “ to be employed in carrying stores belonging to the United States Government, * * * in such trips or on such duty as may be directed by naval authority acting for the charterers,” and that the Government would “ redeliver [the vessel] at charterers’ option, in like good order and condition, ordinary wear, tear, and depreciation, damage by the elements, collision at sea and in port, bursting of boilers, and breakage of machinery excepted.”
If the vessel was at the “ disposal ” of the Government, it is obvious that the H. N. Co. had lost control over it. The vessel was let “with full complement of officers, seamen,” etc., and the whole of the vessel was at the “ charterers' disposal,” reserving only space necessary for the crew, tackle, fuel, etc., necessary for its operation. This provision gave the defendant the right to load the vessel in whatever man - ner it desired and dispose of the cargo on the decks of the *303 vessel as its agents directed. Pay for the hire thereof was to commence “ on the day of her delivery ” and “ to continué until her redelivery.”
It is contended on behalf of the defendant that the H. N Co. did not surrender the navigation of the steamship to the defendant, and that unless this is shown there was no> demise of the vessel. But the captain acted merely as sailing master. True,' he gave orders or directions necessary to take the vessel wherever the agents of the Government directed, but the control of the navigation was exercised by the defendant, and, as was said by'Mr. Justice Holmes in the case of Standard Oil Co. v. United States, 267 U. S. 76, 79:
“ It no more mattered that the master took an active part in the navigation than that the ship still was steered by one of the crew.”
That both the H. N. Co. and the defendant regarded the ship as absolutely under the control of the defendant is shown by letters received from the supply officer, Captain T. H. Hicks, who acted for the defendant, in one of which he said:
“ It is requested that the captains of any vessels now under charter to the Navy Department be directed to carry out orders immediately, unhesitatingly, and without question ”;
and in another that—
“ You will appreciate, of course, that in time of war a Government-chartered vessel must be available for any duty to which it is assigned and that no questions as to the advisability of employing the vessel on that particular duty can be tolerated.”
On receipt of these letters, the president of the H. N. Co. gave directions that these orders should be carried out by the captains of the H. N. Co.’s vessels in the service of the Government. The evidence on the whole shows, as stated in Finding VII, that during the time when the vessel was in the service of the Government the Navy Transport Service had the entire use of the vessel and it was “ subject at all times to the orders and directions of the officers of the Government, and at no time during the period did the H. N. Co. have the use of ” nor did it “ in any way interfere with *304 or direct the operation of the said ” vessel. Upon a similar finding, it was held in United States v. Shea, 152 U. S. 178, and Cornell Steamboat Co. v. United States, 58 C. Cls. 497, 267 U. S. 281, that there was a demise of the vessel. The defendant relies to a considerable extent upon Leary v. United States, 14 Wall. 607, and a number of earlier cases. We have examined them with care and if any different rule is laid down therein it still remains our duty to follow the later cases.
It ought also to be said that the leading English cases hai’monize entirely with the cases of Shea and Cornell, supra. In Meikelreid v. West, 1 Q. B. 428, the facts are very similar to those of the case at bar. It appeared that the ship was to be under the direction of the charterers to be employed in certain limits as directed by them, the charterers to pay for coals and all wages and expenses of the crew and to deliver up the ship to the owners in as good order and condition as when received. It was held that it was clearly a demise.
Much argument on both sides has been devoted to a con-* sideration of the evidence with relation to insurance policies taken out on the vessel covering the period when it was in the service of the United States, and also as to whether any of these policies were enforceable after the vessel was used to carry oils and explosives. We do not think this evidence is material. The charter contract provided that the u owner ” should pay for the insurance of the vessel against marine risks, or should assume such risks, and if any policies were taken out the H. N. Co. was only acting in accordance with the provisions of the contract. If the H. N. Co. went further than the contract required, this in no way affected its right under the charter.
The conclusion that there was a demise of the vessel is strengthened by the provision in the charter that upon the determination thereof the Government should redeliver the chartered vessel. This provision carried a clear implication that under the contract the vessel was to be first delivered to the Government and then on the conclusion of the contract delivery was to be made back to the H. N. Co. We *305 think there was clearly a demise, and that the Government was obligated to return the S. S. Fenimore to the H. N. Co. at the termination of the charter period, unless relieved of such obligation by some other provision in the charter or some facts and circumstances not so far considered in this opinion. The position of the defendant in such case would correspond with that of a bailee for hire with reference to property on land.
It is urged on behalf of the defendant that by a provision of the charter the “ owner ” assumed the marine risks which, it is argued, included fire. If this position is well taken, obviously there is no liability on the part of the defendant.
It seems to have been considered by counsel for defendant that all risks and perils must fall under one of the two classes of marine riskp and war risks. We do not think this follows. There is another class of perils incident to property on land and therefore not marine risks, but they are not connected with war and therefore do not fall under the class of war risks.
It is immaterial whether the fire which destroyed the vessel was a war risk, if it was not a marine risk. The courts generally hold that a marine risk must be “ of the sea ” and not merely one occurring “ on the sea,” and that marine risks are “ the perils necessarily incident to navigation.” (Abbott’s Law Dictionary.) So in the case of The G. R. Booth, 171 U. S. 450, damage caused by an explosion arising out of the nature of the cargo could not be considered a peril of the sea. In The Giulia, 218 Fed. 744 (C. C. A.), it was said that perils of the sea are understood to mean those perils which are peculiar to the sea. In the English courts, it seems to have been very clearly held that fire would not be a peril of the sea; so also was the ruling in Slater v. Haywood Rubber Co., 26 Conn. 142. We think, therefore, that the fire which destroyed the vessel was not a marine risk.
This renders it unnecessary to determine whether the fire, under the circumstances, was a war risk, but it may be noted in' this connection that the Fenimore was being operated under war-time conditions and as a part of a combatant *306 fleet. There can be no doubt, we think, that the Fermnore was engaged in warlike operations. On the day before she had been destroyed by fire she had been loaded by Government stevedores under the control and supervision of officers of the United States Navy, and her cargo included 95,000 pounds of ammunition, gasoline, and lubricating oils. There is every reason to believe that the fire would not have occurred had not oil in leaky barrels been loaded near the fireroom of the vessel, and that the difficulty in extinguishing the fire was greatly enhanced by the character of the cargo. We prefer, however, to rest our decision upon the ground that the fire was not a marine risk and therefore under the general rule where vessels are demised and the special provisions of the charter, the Government was bound to return the vessel in good condition, ordinary wear excepted.
It is further contended on behalf of the defendant that neither the plaintiff nor the intervenor is the real party at interest in the case or entitled to maintain an action for the loss of the S. S. Fenimore for the reason that the Hudson Navigation Company was not the owner of said steamship at the time of its loss.
In support of this contention, the defendant relies upon the fact that after the H. N. Co. acquired title to the vessel it executed a bill of sale to the New York, Albany & Troy Transportation Line covering the ship, which bill of sale was duly registered; and the New York, Albany & Troy Transportation Line executed a mortgage on the vessel to the Union Trust Company to secure an issue of $100,000 in bonds, which were delivered to and kept by the Hudson Navigation Company. The defendant also calls attention to some other details in the evidence which it claims tend to show that the H. N. Co. was not the real owner of the vessel at the time of the loss.
The record is silent as to what further action, if any, was taken with reference to the bill of sale, except that the evidence shows that it was entirely disregarded by the parties thereto and that there was no delivery of the S. S. Fenimore pursuant to the bill of sale. On the contrary, the H. N. Co. *307 retained continuous possession and control of the steamship, operated said vessel, and received and appropriated unto itself all earnings therefrom without making any accounting of any kind to the New York, Albany & Troy Transportation Line. Finally, on June-27,1917, the Hudson Navigation Company, as owner of the steamship, contracted with and chartered to the defendant the vessel and delivered possession to the defendant under the said charter. Thereafter the defendant paid charter hire due under the charter -to the Hudson Navigation Company."'
All the stock of the New York, Albany & Troy Transportation Line was owned by the Hudson Navigation Company, There is no direct evidence that the first-named company knew what the Hudson Navigation Company was doing with the steamship, but under the circumstances, and considering the close relations of the two companies, the New York, Albany & Troy Transportation Line must have known that the steamship was never delivered to it, and that the Hudson Navigation Company continued to use the vessel and to appropriate all of its earnings — in short, to treat the steamship as its own — and that it made the charter party contract with the Government as owner of the vessel and continued to appropriate the pay therefrom. The New York, Albany & Troy Transportation Line must have known also of the loss of the vessel and of the suit brought by the receiver of the H. N. Co. to recover its value. It has not intervened herein, nor, as far as it appears from the record, shown any interest in the proceedings.
On the other hand, there is nothing to show that the bill of sale was ever withdrawn or given up or that the bonds were ever canceled. Upon the whole, if it were necessary to determine whether the H. N. Co. was the owner of the vessel at the time of the loss, it might be a difficult question.
But this is not the real question in the case, which is, to which corporation, if any, was the defendant liable on account of the loss of the vessel. Here we find that the defendant contracted with the H. N. Co. alone and recognized it as the owner in the contract; paid the H. N. Co. for *308 the charter hire; and, what is still more important, the New York, Albany & Troy Transportation Line, with knowledge of all of the facts above recited, stood by and made no claim of ownership, control, right to receive payment for the charter hire, or right to intervene in this action. Whatever rights it may have had against the H. N. Co., it would not seem that it had any right of action against the defendant for the loss of the vessel under such circumstances. The defendant made no contract with the N. Y., A. & T. Line and did not recognize it as owner.
But it is not necessary to determine whether the New York, Albany & Troy Transportation Line could have maintained any action against the defendant. It has not and can not now, because such action would be barred by the statute of limitations; and in any event there is nothing in all of these very peculiar transactions, for which no explanation is found in the evidence, to in any way render invalid the ' contract of the defendant to redeliver to the H. N. Co. the vessel in good order and condition, subject only to certain specified exceptions not necessary to be considered here. Upon this provision of the contract the defendant must be held liable, its other defenses having been held insufficient.
The only remaining question in the case is as to the value of the vessel at the time it was destroyed. Much of the evidence that has been introduced on both sides is of doubtful competency, to say the least. The defendant offered in evidence the report of the inspection and survey made by the Joint Merchant Vessel Board of the Army and Navy. No member of this board was called as a witness for defendant. This court held in Heathfield v. United States, 8 C. Cls. 213, with reference to the recommendations of a board of survey, that “ the decision of such an ex parte tribunal is not binding upon contractors, nor are its proceedings evidence against them.” This report is clearly not competent evidence. Upon a review of all the testimony, we think there is sufficient competent evidence to sustain the finding of the commissioner that the fair market value of the Fenimore on June 22, 1918, was $145,000. This is much less than the value given by any of the plaintiff’s witnesses, and it must be borne in mind that this was a war-time valuation.
*309 Our conclusion is that the intervenor, the Hudson River Navigation Corporation, is entitled to judgment for $145,000, and it is so ordered.
SiNNott, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.
SUPPLEMENTAL OPINION ON MOTION POR NEW TRIAL
Green, Judge,
delivered the opinion of the court:
Upon consideration of the motion for a new trial, we find that certain amendments to the Special Findings of Fact are requested by defendant. In so far as'these requests embody what in the opinion of the court are actually facts shown by the evidence, the findings have been amended to include such facts, although they do not appear to have any bearing on the opinion of the court and the judgment which should be rendered herein. No claim is made by the defendant that any provisions contained in the contract other than those set out in the original findings have any bearing on the questions involved in the case, and the same is true with reference to the other two matters as to which the findings are amended. The remaining requests of defendant for amendments and changes to the findings are denied as not being in accordance with the evidence.
One matter is presented in argument upon the legal features of the case to which no reference was made in the former opinion of the court for the reason that, although it is mentioned in the original argument, it was not pressed, no authorities were cited, and the court on the original submission did not consider that it was insisted upon. As the defendant now strenuously contends that the intervenor obtained its title to the claim upon which judgment is rendered by virtue of an assignment which is prohibited by law, it is thought that it would be well to state the reasons for rejecting this defense.
An examination of Findings XIV and XV will show that the intervenor does not rest his title upon an assignment from some other party, but obtains it by and through a conveyance made by a special master appointed by a court under *310 a final decree and judgment in a case where receivers had been appointed for the Hudson Navigation Company. It is true that the Assets Purchasing Corporation had previously assigned to the intervenor its right to receive this deed and conveyance under the sale which had been ordered by the court, but this statement in Finding XIV is merely explanatory of how the special master came to execute the conveyance to the intervenor. The title of the intervenor rests solely upon the conveyance ordered and approved by the court.
In Price v. Forrest, 173 U. S. 410, 421, it is said:
“ In Goodman v. Niblack, 102 U. S. 556, 560, where the question was whether the above statute [section 3477, R. S.] embraced voluntary assignments for the benefit of creditors, this court, referring to Erwin v. United States, said: 1 The language of the statute, “ all transfers and assignments of any claim upon the United States, or of any part thereof, or any interest therein,” is broad enough (if such were the purpose of Congress) to include transfers by operation of law, or by will. Yet we held it did not include a transfer by operation of law, or in bankruptcy, and we said it did not include one by will.’ ”
The court then goes on to explain why such assignments can not be held to have been within the purpose and intent of the statute, and in the case then under consideration (Price v. Forrest, supra), held that the orders made in the State court transferring or assigning the claim in question against the United States were not in violation of the statute; and it should be observed also in this connection that part of the order was that an assignment be made of the original claim. The court further said on this point that (p. 425) :
“ * * * it is difficult to see how an order of a judicial tribunal having jurisdiction of the parties appointing a receiver of a claim against the Government and ordering the claimant to assign the same to such receiver to be held subject to the order of court for the benefit of those entitled thereto, can be regarded as prohibited by that section.”
The decision would seem to go farther than is necessary in this case.
In Seaboard Air Line Ry. v. United States, 256 U. S. 655, 656, a number of cases are cited wherein “ exceptions *311 to the general language of the section were recognized because not within the evil at which the statute aimed ”; and, although in that case the transfer and assignment was not made by an order of court, it was nevertheless held valid. In Western Pacific Co. v. United States, 268 U. S. 271, 275, it is said that the statute “ does not embrace cases where there has been a transfer of title by operation of law.” See also Davis Sewing Machine Co. v. United States, 60 C. Cls. 201.
We think the case at bar comes clearly within the exceptions to the general language of the statute under the rules laid down by the Supreme Court. The other matters presented in defendant’s motion for a new trial were fully reviewed by the former opinion and we find no reason for departing from the conclusion therein expressed. The motion for a new trial is therefore denied.
SiNNOtt, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.