**SOUTHERN STATES TOWING LINES, Inc., v. LEE TRANSIT CORPORATION. THE COMANCHE.**

No. 16602.

District Court, E. D. New York.

April 15, 1943.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for libellant.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for respondent.

CAMPBELL, District Judge.

This action is brought by the libellant, to recover charter hire for the tug "Comanche", alleged to be due, and for damages alleged to have been caused by the use of the tug as an ice breaker.

On or about December 15, 1941, the libellant, by oral charter, confirmed in writing on December 16, 1941, chartered to respondent the tug "Comanche", for a period of thirty days at an agreed price of One hundred and eighty dollars per day. The charter constituted a demise. In accordance with the terms of the original charter, the libellant and respondent extended the charter for a definite period of thirty days.

The respondent took possession of the "Comanche" on December 15, 1941, and finally the charter having ended on February 14, 1942, the "Comanche" was delivered to libellant on February 15, 1942.

The libellant billed respondent for charter hire from December 15, 1941 at 6 A.M. to December 31, 1941, at midnight, which bill was paid in full, and requires no further consideration.

The libellant billed respondent for charter hire from December 31, 1941, to January 15, 1942, at midnight; from January 15, 1942, at midnight to January 31, 1942, at midnight, and from January 31, 1942, at midnight to February 14, 1942; the total of the three billings being $8,373.59 and the total amount of the payments being $6,348.59, leaving an amount unpaid of $2,025. In addition to this, libellant claimed an additional amount of $297 for which it billed respondent, because of the increased amount of wages required to be paid to the crew, but this charge of $297 has been waived by the libellant, leaving the amount claimed to be due for charter hire $2,025.

During part of the time for which such charge was made, the "Comanche" was, on the orders of the libellant, sent to dry dock for repairs. What deduction, if any, the respondent is entitled to, because of being deprived of the use of the "Comanche" on the days in question, is dependent on whether the repairs the "Comanche" was required to make were due to the negligence of the respondent, its agents, or servants, or to the failure of the libellant to keep its tug in repair. The libellant is entitled to recover such sum as charter hire, less any deductions, which may be found to be proper. United States v. Cornell Steamboat Co., 267 U.S. 281, 45 S.Ct. 239, 69 L.Ed. 613.

The "Comanche" was used by the respondent for towing from Gulfport, New York, to Middletown, Connecticut, and had met with considerable ice prior to January 17, 1942, which she had been used to break.

On January 16, 1942, notice was given on behalf of the libellant to the respondent,

in writing, of which an officer thereof had been apprised on January 17, 1942, that it would hold the respondent for all damages caused to the "Comanche" by using her for the purpose of breaking and plowing through ice.

On January 22, 1942, the tug "Comanche" was in good seaworthy condition. She had, on the orders of the respondent, left Gulfport, New York, bound for Middletown, Connecticut, on the Connecticut River, with a loaded oil barge in tow. The Master of the "Comanche", who was employed and paid by the libellant, but was acting under the orders of the respondent, was told by a representative of the respondent to stop with the tug and tow at Saybrook, Connecticut, and pick up a Pilot, who would take charge of the tug when he gets on at Saybrook.

When the tug arrived at Saybrook, she stopped, and a Connecticut River Pilot, boarded the "Comanche", went to the pilot-house, and took charge of the tug. The "Comanche" with her tow proceeded up the river, with the Pilot at the wheel, navigating the tug, without any particular incident. Ice was encountered, but caused no difficulty as the "Comanche" had been preceded up the river by other vessels.

The "Comanche" and her tow arrived at Middletown in good condition.

After the oil barge was unloaded, the "Comanche" on the following day, January 23, 1942, started down the river with the light oil barge in tow, on two short hawsers.

The Pilot was at the wheel, and in charge of the navigation of the tug.

The ice had become very heavy, and the headway of the "Comanche" and her tow, from time to time, was stopped. When this happened, the hawsers, on the order of the Pilot, were let go, the barge was stuck in the ice, and the Pilot would put the "Comanche" in the ice as far as he could, and when she was stuck, he would back her up, get another start, and ram in the ice.

The Master of the "Comanche" told the Pilot he had better stop ramming in the ice, before he does some damage and to run light to a dock, and call the office and ask for help. The Pilot replied that his orders were, to get the boat out of the ice.

The Pilot did not take the tug into a dock, but continued to ram the tug into the ice.

About four o'clock P.M. the engineer of the "Comanche" reported to the Master that he had a leak in the forward fuel tank.

The "Comanche" finally arrived at Saybrook in a damaged condition, due to injuries received in being used as an ice breaker that day on the voyage from Middletown to Saybrook.

On behalf of the respondent, the protest of the Master of the "Comanche", and the alleged reply of the Pilot, was denied, but, I believe the story told by the Master of the "Comanche".

On behalf of the respondent, it is contended, that a track had been broken by other vessels, which came down on the Connecticut River below Middletown on the day in question, and that the ice was not heavy. The term heavy is a relative term, and in my opinion, the ice met with, in coming down the river, on that morning, was thick, and firm, in the track where it had frozen over night, and there was not much traffic before the "Comanche" passed down.

It is true, as contended by the respondent, that tugs do frequently break ice for the passage of their tows, but, we must not lose sight of the fact that, in the instant case, whether the Master of the "Comanche" did, nor did not protest against her use as an ice breaker, and I have held that he did, the owner of the "Comanche" before its use for that purpose, on the occasion in question, did, on January 17th, 1942, and before the day in question, protest in writing to the respondent against such use of the tug.

In the face of that protest, and the protest of the Master of the tug, respondent's representative, the Pilot, employed by it, did negligently use the tug to break the ice, and by such use, the tug "Comanche" was damaged.

For the damage, so caused, the respondent is wholly and solely at fault and to blame.

A decree should be entered in favor of the libellant against the respondent, with interest and costs, and the usual order of reference.

Settle decree on notice.