CLEARY BROTHERS, as owners of THE CLEARY NO. 74, Libelant,

v.

CALLANAN ROAD IMPROVEMENT CO., Respondent,

and

East Kingston Brick Co., Respondent-Impleaded.

No. 19732.

United States District Court
E. D. New York.

Feb. 14, 1956.

---

Foley & Martin, New York City, for libelant, by John H. Hanrahan, Jr., New York City, Advocate.

Mahar & Mason, New York City, for respondent, by Frank C. Mason, New York City, Advocate.

Pyne, Lynch & Smith, New York City, for respondent-impleaded, by Vincent J. Ryan, New York City, Advocate.

RAYFIEL, District Judge.

Cleary Brothers, the libelant, hereinafter referred to as Cleary, is the owner of the scow Cleary No. 74, which is without motive power. It filed a libel herein against Callanan Road Improvement Company, hereinafter called Callanan, alleging that while the scow was under charter to Callanan it sustained certain damage. Callanan impleaded the East Kingston Brick Company, hereinafter called East Kingston, claiming that the damage referred to in the libel occurred after it had entrusted the scow to East Kingston, and while it was in the latter's care, custody and control.

These are the facts, as I find them. On or shortly prior to April 22, 1951, the Cleary No. 74 took on a load of sand at Newburgh, New York, the loading being accomplished by means of a chute, which carried the sand from the hopper, in which it was stored, to the deck of the scow, which then proceeded to East Kingston's plant for the purpose of unloading the cargo, arriving at its dock on April 22, 1951.

The operation of unloading the cargo of sand was begun on April 22, 1951, and continued through April 23 and April 24. It was done by means of a crane, from which was suspended a so-called clam bucket, which was lowered to the deck of the scow to receive a load of sand, and then raised and its contents deposited on East Kingston's dock, or adjacent thereto. The crane and bucket were owned and controlled by East Kingston, and, except as hereinafter stated, were operated by John Berardi, one of its employees, during all the times the cargo of sand was being discharged. Berardi's position with East Kingston in 1951 was that of foreman. While he had operated a crane for a number of years prior thereto, his testimony as to the frequency thereof was indefinite and, at times, contradictory. It seems clear, however, that he unloaded cargoes of sand very infrequently, that work, as he testified, being usually done by others.

During the morning of April 24th, while Berardi was operating the crane and bucket, John De Young, Captain of the Cleary No. 74, who was aboard her at the time, heard loud noises which he stated were caused by the striking of the scow's deck by the clam bucket. He complained to John Mooney, superintendent of East Kingston's plant, telling him that "if he couldn't do anything to stop that man (Berardi) unloading my boat he will ruin the whole deck before he gets through with it." (matter in parenthesis added)—S.M. Page 10. Mr. Mooney admitted that De Young made the complaint, and testified that thereupon he displaced Berardi, personally taking over the operation of the crane and bucket between 12 o'clock noon and 1:00 P.M., after which he assigned his brother, Thomas, to the task of completing the unloading operation.

De Young testified that he was captain of the scow during the entire charter period; that at the commencement thereof the Cleary No. 74 was in very

good condition; that he examined it again after it had taken on a load of sand at Newburgh, and found no broken deck planks; that after he complained to John Mooney, as aforementioned, he inspected the scow and found some newly broken deck planks. He testified further that Berardi had operated the bucket carelessly, frequently causing it to be lowered to the scow in a jerky manner, and striking the deck while open and at an angle, resulting in the damage sustained by the scow. He said, at page 7, S.M., that the condition of the Cleary No. 74 after the expiration of the charter period was very bad.

Thomas J. Kennedy, who was in the employ of Callanan in 1951, testified that he made a preliminary inspection of the Cleary No. 74 shortly after the occurrence at East Kingston, and subsequently attended a formal survey thereof on May 15, 1951, on both of which occasions he examined her deck planks. He corroborated De Young to the extent of testifying that he observed breaks, of then recent origin, in about seven of the deck planks.

I am satisfied that Cleary chartered its scow to Callanan on March 29, 1951, for an indefinite period, with the proviso that it was to be returned in the same condition as when received by the latter, ordinary wear and tear excepted; that it was subsequently delivered to Callanan, which entrusted her to East Kingston on or about April 22, 1951; that she was returned to Cleary on May 20, 1951, in a damaged condition, which was not the result of ordinary wear and tear.

I am satisfied also that Berardi, an employee of the respondent-impleaded, operated the crane and clam bucket in a careless, negligent and unskillful manner, permitting the bucket to strike such violent blows to the deck of the Cleary No. 74 as to cause damage to a number of her deck planks.

Accordingly, I find East Kingston primarily, and Callanan secondarily liable for the damage sustained by the Cleary No. 74, between April 22nd and April 24th, 1951.

Submit proposed findings of fact, conclusions of law and decree in conformity herewith.