**OHIO VALLEY ENGINEERING CO., Inc.**

v.

**BARGES OVE 102 AND 103 and Charles D. Hightower.**

**Charles D. HIGHTOWER**

v.

**BARGES OVE 102 AND 103, etc.**

**OHIO VALLEY ENGINEERING CO., Inc.**

v.

**The TUG SUMTER, etc., and Fireman's Insurance Co.**

Nos. 3932, 3941, 4261.

United States District Court
E. D. Louisiana.

Feb. 21, 1963.

George A. Frilot, III, George B. Matthews, New Orleans, La., for Ohio Valley Engineering Co.

Thomas B. Wheeler, New Orleans, La., for Charles D. Hightower.

Neal Hobson, New Orleans, La., for Louisiana Materials Co., Inc.

ELLIS, District Judge.

On November 18, 1958, the Ohio Valley Engineering Company, Inc., presently known as the Ohio Valley Construction Company, Inc., hereafter referred to as "Ohio Valley", entered into a written agreement covering the charter of the barges OVE 102 and OVE 103 to Mr. Charles D. Hightower. The charter was for a period of six months and provided for charter hire at the rate of two thousand eight hundred ($2,800.00) dollars per month. Mr. Hightower made a deposit of $2,800.00 on account of charter hire.

After execution of the charter the barges were moved from Spottsville, Kentucky, to Gilbertsville, Kentucky, a distance of 125 miles. On November 22, 1958, the barges were surveyed by Mr. Hugh Hammond, an independent marine surveyor. At the time of the survey Mr. Hightower was present aboard the barges. The survey indicated that both barges were seaworthy; however, it was noticed that there was five inches of clear water in the Number 3 starboard compartment of the OVE 103. At the end of the survey Mr. Hightower accepted the barges pursuant to the charter.

The barges remained at Gilbertsville until December 2, 1958, at which time they were loaded and towed to Paducah, Kentucky, without incident, where they were tied off at Walkers Fleet.

On December 5, 1958, Mr. Hammond was in Paducah and noticed both barges on even keel at their moorings. The following day he noticed that the OVE 103 was listed slightly towards her outboard side.

During the night of December 5, 1958, the OVE 103 was struck by an unidentified towboat which left the marks of its towing knees on the deck of the barge. This presumably caused the OVE 103 to list and dump its deck cargo of 1377 tons of stone into the river during the night of December 6. During the process the OVE 103 damaged herself and the OVE 102.

Both barges were repaired at the Paducah Marine Ways, during the course of which it was discovered that the OVE 103 had a ½ inch round hole in the bottom of her Number 3 starboard compartment.

These barges had made a trip of approximately 125 miles from Spottsville to Gilbertsville, Kentucky, where they remained afloat for a period of ten days prior to being loaded. After the loading of deck cargo was completed the barges were towed to Paducah and at no time took any water. The Court finds that the most reasonable assumption is the hole in the bottom of the Number 3 starboard compartment of the OVE 103 was, in some way, cut into the bottom plating of the barge at the Paducah Marine Ways after the barge had been put on the ways there on or about December 7, 1958.

The Court finds that even if the hole did precede the charter, chronologically, this in no way could have caused the vessel to dump its deck cargo. The primary cause was the barge being rammed by an unidentified towboat.

Ohio Valley expended $605.00 in repairing the barges at Paducah Marine Ways, the balance of the cost of repairs being paid by the underwriters. After the repairs were completed the barges were surveyed and found to be seaworthy.

The barges were loaded and made an uneventful trip to the New Orleans, La., area. After being discharged of the cargo that they brought downriver, Hightower subchartered the barges under a verbal agreement to the Louisiana Materials Company, Incorporated, hereafter referred to as "Louisiana Materials", the later organization using them in the shell trade in the New Orleans area.

On March 5, 1959, the Tug SUMTER received instructions from Louisiana Materials to move the barges from that Company's yard on the Industrial Canal, New Orleans, to the location of its dredge on the north shore of Lake Pontchartrain and west of the Causeway. The SUMTER was covered by a "Tower's Liability" clause in an insurance policy issued by the National Surety Corporation.

The SUMTER made up the barges and departed the yard at approximately 2:00 P.M. The trip from the yard to Seabrook takes approximately ½ hour and the trip from Seabrook to the dredge site about 2½ hours.

At the time that the tug departed the yard Louisiana Materials knew of a forecast of a norther with high winds, but it was assumed that the tug would have time to get the barges to the site of the dredge before the weather changed.

That same afternoon Louisiana Materials learned that the tug and barges had not cleared Seabrook and sent one of their representatives to check on the tug. After some discussion with the Master the tug got under way at about 4:00 P.M. At this time it was reasonable to believe that the tow could reach the dredge before the norther passed and the weather changed.

As the tug proceeded towards the north draw of the Causeway, the weather became increasingly bad and it was ultimately determined that it would be impossible to transit the north draw.

The Master of the tug talked to the Captain of the dredge and advised him that he intended to seek shelter in Bayou Lacombe. This Bayou is very difficult to enter from the Lake, even under favorable conditions. The dredge Captain told the Master of the tug not to attempt the maneuver but to ride out the storm in the Lake. In spite of this warning the master attempted to enter Bayou Lacombe and in so doing stranded the barges. (By contrast the Court notices that the dredge and four barges rode out the blow, in open water, with no trouble and without incident.)

Efforts to free the barges on the following day were of no avail.

On or about March 15, 1959, Hightower notified Ohio Valley that the barges had been stranded and Ohio Valley sent a representative to New Orleans to discuss the matter with Hightower.

Ohio Valley requested that Hightower undertake to salvage the barges. Nothing was done. The charter party was subsequently cancelled, in writing, for

nonpayment of charter hire, Ohio Valley filed a libel for possession of the barges and had its marine surveyor solicit bids from a number of salvors to free the strand. The low bid was submitted by J. Ray McDermott & Company, Inc., and Ohio Valley filed a motion seeking court authority to accept the low bid and proceed with the salvage job, subject to the seizure of the barges which had been effected by the United States Marshal.

At the hearing of the motion Hightower's attorney represented to this Court that his client could salvage the barges at a cheaper price and the Court issued the following order:

> "ORDER
>
> "After having heard argument of counsel in connection with libellant's motion to be permitted to salvage the Barges OVE 102 and OVE 103, subject to the seizure by the United States Marshal, and to permit the United States Marshal to seize the barges without the necessity of placing a keeper aboard;
>
> "IT IS HEREBY ORDERED that unless libellant, through its proctors, Lemle & Kelleher, is advised prior to 6:00 p. m. on March 26, 1959, that the aforesaid barges have been freed from the strand, libellant is hereby authorized and empowered to employ J. Ray McDermott & Company, Inc., to salvage the said barges for the price and sum of $8,500.00 subject to the seizure of the barges by the United States Marshal;
>
> "IT IS FURTHER ORDERED that the United States Marshal be and he is hereby authorized and directed, subject to the foregoing, to permit the salvage of the barges and to seize the same pursuant to the admiralty warrants issued herein, without the necessity of appointing and placing a keeper aboard the said barges.
>
> "New Orleans, Louisiana, March 25, 1959.
>
> "s/ J. Skelly Wright
> United States Judge"

The strand was not broken by the deadline. When the salvage firm employed by Hightower was notified of the orders of this Court it immediately withdrew from the job, McDermott brought in its equipment and broke the strand. The barges were moved to Avondale Marine Ways, Inc., where the stranding damage was repaired.

As per stipulation between the parties the claim for charter hire is in the amount of ten thousand eight hundred eleven dollars and twenty-three cents ($10,811.23) and the damages resulting from the stranding of the barges amount to ten thousand eight hundred fifty-seven dollars and fifteen cents ($10,857.15).

The above facts gave rise to three libels in admiralty: Admiralty No. 3932 wherein Ohio Valley libelled the barges OVE 102 and OVE 103 and Charles D. Hightower, seeking to recover the barges and to recover charter hire from Hightower; Hightower cross-libelled seeking to recover $30,000.00 for loss of stone in Paducah, Kentucky, asserting that the OVE 103 was delivered in a leaky and unseaworthy condition; Admiralty Number 3941 wherein Hightower libelled the barges OVE 102 and OVE 103 seeking the recovery of monies expended in the salvage operation after those barges were grounded by the Tug SUMTER. A cross-libel was filed for recovery of charter hire and recovery of monies expended in salvaging and repairing the barges. Admiralty Number 4261 wherein Ohio Valley libelled the Tug SUMTER and its insurers for the grounding of the barges and expenses incurred thereafter. Respondents impleaded Louisiana Materials asserting that the real cause of the incident was the fault of respondent-impleaded in ordering the tug out in inclement weather.

Insofar as the libel for due charter hire is concerned it is a matter of fundamental law that under a demise "rent is payable until the end of the stipulated term and the return of the vessel," United States v. Shea, 152 U.S. 178, 188, 14 S.Ct. 519, 522, 38 L.Ed. 403; United States v. Cornell Steamship Com-

788

pany, 267 U.S. 281, 286, 45 S.Ct. 239, 69 L.Ed. 613 and especially so in this case in the light of the Court's finding of fact that the barges were delivered to charterer seaworthy in all respects.

We now come to the question of liability for the stranding of the barges and the consequent damages.

▬▬ The owner must allege and prove negligence on the part of the charterer in order to recover damages caused during the term of the charter party. Where the owner, however, proves that the vessel was delivered to the charterer in a seaworthy condition and returned in a damaged condition, the owner had made out a prima facie case of negligence and the burden of going forward with the evidence is upon the charterer to prove that the damage did not result from his negligence, Richmond Sand & Gravel Corporation v. Tidewater Construction Corporation, 4 Cir., 170 F.2d 392; The E. T. Halloran, 2 Cir., 111 F.2d 571; Kenny v. City of New York, 2 Cir., 108 F.2d 958, or that he exercised due care, delivered a seaworthy vessel to a subcharterer and was returned the vessel in a damaged condition, The C. W. Crane, 2 Cir., 155 F.2d 940; James McWilliams Blue Line, Inc. v. Esso Standard Oil Company, 2 Cir., 245 F.2d 84; or that the vessel received its wounds at the hands of a third party other than subcharterer, Cleary Brothers v. Callanan Road Improvements Company, S.D.N.Y., 138 F. Supp. 34.

▬▬ The Court finds that Hightower has sustained the burden of proving that he was without fault insofar as the stranding of the barges was concerned.

▬▬▬ "The law regarding towage is well settled. The tug is not a common carrier, and not an insurer, but is bound to exercise ordinary care and to display competent seamanship in the handling of the tow", Dameron-White Company v. Angola Transfer Company, 5 Cir., 19 F.2d 12, 14; and "[i]t needs no ex-

tended citation of authority to show that where a tug negligently grounds its tow, the tug and her owner are liable for the damages resulting therefrom," Canadian Aviator Limited v. United States, 324 U.S. 215, 228, 65 S.Ct. 639, 646, 89 L.Ed. 901.[1]

▬ "In cases of tort, American admiralty law has traditionally regarded the ship as causing the harm although the actual cause is the negligence of the personnel lawfully in charge of her," Young Brothers, Limited v. John Cho (The Kolo), 9 Cir., 183 F.2d 176, 177. "Such personification of the vessel, treating it as a juristic person whose acts and omissions, although brought about by her personnel, are personal acts of the ship for which, as a juristic person, she is legally responsible," has long been recognized by the Supreme Court, Canadian Aviator, Limited v. United States, supra, 324 U.S. at page 224, 65 S.Ct. at page 644.

▬ In application of the above to the facts at hand the Court holds the Tug SUMTER primarily at fault and in primary responsibility. It has been argued that the time charterer of the SUMTER (Louisiana Materials) had a hand in the incident by virtue of its alleged malfeasance in ordering the SUMTER out in the face of impending inclement weather. This Court does not find this to be the case for the stranding of the barges was primarily caused by the improvidence of the Master of the SUMTER in attempting a very difficult maneuver contrary to timely instructions (to ride out the storm) from Louisiana Materials. The president of Louisiana Materials testified that dispatch instructions are general operational orders and that the tug Masters have the last word as to weather conditions.

Louisiana Materials argues that it could not be held liable unto Ohio Valley, in Admiralty Number 4261, because in the libel therein no negligence is alleged which could be attributable to Louisiana

1. Also see Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699, holding a towing vessel liable to its tow only for negligence.

Materials—the claim being that the SUMTER was unseaworthy or negligently navigated. It asserts that libellant should not be allowed to avail itself of allegations of the petition of interpleader which it did not adopt. The question need not be passed on by the Court—it is moot for the Court does not find Louisiana Materials at fault.

The last issue to be settled arises over the interpretation of the tower's liability clause in the insurance contract National Surety issued covering the tug SUMTER. National Surety argues that it is entitled to charge two deductible features of two thousand dollars ($2,000.00) each because the damages arise out of two strandings and damages to two barges. That portion of the policy dealing with the deductible feature reads as follows:

"The sum of $2,000.00 shall be deducted from the total amount of any and all claims (including claim for sue and labor, collision liability, general average and salvage charges) *resulting from any one accident.* This deduction does not apply to claims for total or constructive total loss. For the purposes of this clause, each accident shall be treated separately, but it is agreed that a sequence of damages arising from the same accident shall be treated as due to that accident." (italics supplied.)

The plain and unambiguous italicized language of the policy reveals a clear intent to have the deductible apply to "any *one* accident." The Court interprets this clause of the policy as applied to this incident as one accident, one stranding of two barges and therefore subject to one deductible.

Therefore, in application of the above findings of fact and conclusions of law the Court, in Admiralty Number 3932, will allow recovery by Ohio Valley from Hightower for back charterhire in the mount of $10,811.23, and will dismiss the cross libel by Hightower against Ohio Valley for loss of stone in Paducah, Kentucky. The decree will include 10% attorneys fees.

In Admiralty Number 3941 the Court will dismiss the libel by Hightower against the barges OVE 102 and OVE 103 for salvage expenses. The cross libel, for back charterhire and salvage and repair expenses, will likewise be dismissed, the charterhire having been disposed of in Admiralty Number 3932, and the Court's prior finding that Hightower is not liable for the stranding expenses and repairs.

In Admiralty Number 4261 the Court will allow recovery by Ohio Valley against the Tug SUMTER and its tower liability insurer in the amount of $10,857.15, said insurer to be allowed one deductible of $2,000.00. The impleading petition against Louisiana Materials will be dismissed.

Decree accordingly.