THE VEDAMORE. THE LILIE. HENRY v. MICHAEL et al.

(Circuit Court of Appeals, Fourth Circuit. May 10, 1905.)

No. 566.

1. COLLISION—PROPER NAVIGATION—STATION OF LOOKOUT.

While no specific location on a vessel is prescribed for the lookout, he is required by good navigation to be placed at the point best suited for the purpose alike of hearing and observing the approach of objects likely to be brought into collision with the vessel; having regard to the circumstances of the case and condition of the weather.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 142, 163.]

2. SAME—STEAMSHIP AND SCHOONER—IMPROPERLY LOCATED LOOKOUT.

Where a large ocean-going steamship, with decks considerably above the water, was navigating Chesapeake Bay in the night in foggy weather, a lookout stationed in the crow's-nest, 60 feet above the deck, and 100 feet from the stem, was not properly located to see and hear objects in front of the vessel, and especially small vessels of the character that usually navigate the bay, frequently loaded down to their water mark; and the ship was in fault for a collision with a schooner, whose fog signal, regularly sounded, was not heard by the lookout until immediately before collision.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 163.]

Appeal from the District Court of the United States for the District of Maryland.

For opinion below, see 131 Fed. 154.

Charles W. Field and R. E. Lee Marshall, for appellant.

Robert H. Smith, for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. This is an appeal from a decree of the United States District Court for the District of Maryland, in admiralty, adjudging the Vedamore solely in fault for a collision with the schooner Lilie, which occurred in Chesapeake Bay, about 12:20 o'clock on the morning of the 31st of January, 1904, during a fog. The Vedamore was a large ocean-going freight steamer, of 4,122 tons burden, laden with live stock, and bound southwardly down the bay from Baltimore; and the Lilie was a two-masted schooner bound up the bay to Baltimore, with a cargo of cord wood.

The faults alleged against the steamship are, briefly, that she was navigating outside of the usual track of vessels of her size in said bay, at the point of collision, and that her navigators failed to keep a strict and proper lookout, and failed to avoid the schooner after they became aware of her proximity; that they were proceeding at too high a rate of speed in the then condition of the weather and the prevalence of the fog. The faults charged against the schooner are that she failed to keep a proper lookout, suitably located; that she was running at too high a rate of speed during the prevalence of the fog then existing; and that she failed to keep her course, and, on the contrary, starboarded her helm, bringing about the collision.

The case was heard by the court below, the witnesses being examined orally, and the conclusion arrived at was that the Lilie was free from fault in the collision, and that the same could only have occurred from immoderate speed on the part of the steamer, or by her failure to seasonably hear the schooner's fog signal, and that, in the judgment of the court, the collision was attributable to the latter cause. The findings of the lower court were, among other things, to the effect that the steamer was one of the largest class of ocean-going freightboats; that her bridge was 150 feet from her bow; that her only lookout was in the crow's-nest on the foremast, some 60 feet above the deck, and about 100 feet from the stem; that the steamer was carrying a deck load of about 1,000 sheep, immediately under the crow's-nest, and on the forward deck; that, when the schooner's fog signal was first heard on the bridge by the master, he said to the pilot, "I have just heard either a fog horn, or the bleating of a sheep," and just then the lookout signaled, by one stroke on his bell, a vessel on the port bow, the pilot rang to the engine room full speed astern, and the collision quickly followed.

It will not be necessary, in the view taken by the court, to review at length the evidence in the cause, in so far as there is any difference between the parties upon the facts, further than to say that the same has been fully considered, and we see no reason to differ with the conclusions reached by the lower court thereon. The real question in the case turns upon the correctness of the decision of the lower court respecting the location of the lookout on the vessel at the time of the collision. In that conclusion we also concur. While it is true that no specific location on a vessel is prescribed for the lookout, it goes without saying that such location should be at the point best suited for the purpose alike of hearing and observing the approach of objects likely to be brought into collision with the vessel upon which the lookout is located. Confessedly, upon a large

ocean-going ship, the decks of which are considerably above the water, a further elevation of 60 feet in the air, at a point 100 feet from the stem of such ship, would not be a desirable place for either hearing or seeing objects in front of the moving vessel; and this is particularly true of small vessels of the character that navigate the waters of Chesapeake Bay, in the vicinity of the collision, when heavily laden, frequently down to their water marks, and when, as in this case, the chances of hearing are further interrupted by the presence of a large flock of sheep immediately under and in front alike of the lookout in the crow's-nest and the master and pilot on the bridge, it is not surprising that the master was unable to distinguish the difference between the sound of a fog horn and the bleating of the sheep below.

This court, in The Michigan, 63 Fed. 280, 287, 288, 11 C. C. A. 187, 195, a case not unlike this in many respects, speaking through Hughes, J., said:

"The steamer was also guilty of a very grave incidental fault, but for which the accident would not have occurred. A very large portion of the carrying trade of our eastern seaboard is done by modern three and four masted schooners. They have great capacity for freight in the hull, and lie low upon the water. Their decks are not more than 5 to 8 feet above the surface. Vessels of this class traverse all the waters of our Atlantic seaboard, night and day. The Michigan was a vessel of different build. Her main deck was 20 feet above the water level. Her captain's bridge was 35 to 40 feet above the water. Her lookout bridge was 8 feet above deck, and nearly 30 feet above the water. This latter bridge was set nearly 40 feet to the rear of the high-pointed stem of the vessel. It was impossible for a man standing 40 feet back of the stem, on this lookout bridge, to keep a proper lookout, especially in hazy weather, at night, for the large class of vessels lying low on the water, which navigate the approaches to the Virginia Capes. It was a flagrant fault in the Michigan that on the occasion of this collision she had no lookout in her bow, close up to her stem, in position to look over the point of the vessel on each side, and to discover in good time vessels that might be ahead of her in her course."

We see no reason for departing from the rule there laid down as to the place of the location of lookouts on steamships navigating the waters of Chesapeake Bay. In the present case there is much greater reason why that doctrine should be strictly adhered to. To hold that the location of the lookout on the Vedamore in this collision was a proper one, and best suited for either seeing or hearing, would go far to doing away with that most important aid in the efficient navigation of ships. The fact that the lookout upon the Vedamore did not hear the fog signals regularly sounded by the Lilie, within the close proximity of the two vessels, namely 200 feet, strongly tends of itself to show either that the lookout upon the Vedamore was inefficient or improperly located. In discussing the presumptions arising from the failure to hear fog signals, the Supreme Court of the United States in the case of The New York, 175 U. S. 204, 20 Sup. Ct. 73, 44 L. Ed. 126, speaking through Mr. Justice Brown, said:

"No reason is given why the signals of the Conemaugh were not heard, and, as the New York was not more than a mile distant from her when her first signal was blown, her inability to hear them is inexplicible, except upon the theory that no sufficient lookout was maintained, or that such lookout did

not attend properly to his duties. Her officers failed conspicuously to see what they ought to have seen, or to hear what they ought to have heard. This, unexplained, is conclusive evidence of a defective lookout"—and citing The Sea Gull, 23 Wall. 165, 23 L. Ed. 90; The James Adger, 3 Blatchf. 515, Fed. Cas. No. 7,188; The Fanita, 14 Blatchf. 545, Fed. Cas. No. 4,636; The Sunnyside, 91 U. S. 208, 23 L. Ed. 302; Spencer on Collisions, § 175.

Counsel for appellant earnestly insists that inasmuch as, in the then condition of the weather, the two vessels could not have been seen more than 200 feet apart, the location of the lookout in the bow was immaterial, and that, as this case is one depending rather upon the ability to hear than see, the location of the lookout in the crow's-nest was quite as desirable a position as that of the eye of the ship, for the purpose of hearing. We cannot concur in this view, as we believe that a lookout properly stationed in the bow of the ship would have been in a better position to have heard the sounds of the fog horn from a vessel low down in the water, and that certainly it would have been much better for the purpose of observing objects. Appellant also earnestly urges that the absence of the lookout in the bow of the ship on this occasion did not add to the chances of the collision, inasmuch as the ship's first officer was in the bow, looking after the ship's anchor, and that he from that point did not hear the fog signal; and, moreover, says that it was impracticable, by reason of the large number of sheep on the ship's deck, to have a lookout properly stationed there.

As to the latter defense, it cannot avail the ship, since she was bound to properly place her lookout, nor will it do to say that its deck was so overcrowded that proper room could not be reserved for that purpose, and, so far as the first officer's location in the bow of the ship is concerned, while it is not entirely clear from the evidence that he was there until after the schooner was sighted and reported, still that likewise would not serve to relieve the ship from responsibility, as the services of a proper lookout, suitably located, cannot be dispensed with, because some officer of the ship engaged in other duties, such as arranging to lower the ship's anchor, may or may not have heard the fog signals or observed the approaching vessel.

Counsel for appellant cites authorities to show that, if the failure to station a lookout in the bow of the ship did not add to the chances of the collision, they should not be held liable therefor. There is no dispute as to the general proposition that faults which do not cause or materially affect the collision are immaterial, but we do not think that this is such a case. On the contrary, the collision was brought about because of the failure to properly locate the lookout, where he could have seen and heard.

The decision of the lower court is affirmed.