**Ronald FITZGERALD, Plaintiff,**

v.

**James MERRYMAN, Defendant.**

Civ. No. 93–321–P–C.

United States District Court,
D. Maine.

Sept. 22, 1994.

U. Charles Remmel, II and R. Terrance Duddy, Kelly, Remmel & Zimmerman, Portland, ME, for plaintiff.

Laurence Minott, Sawyer & Minott, Windham, ME, for defendant.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

This civil action arises out of a collision of two lobster boats on August 28, 1993, in Potts Harbor, Maine. Plaintiff filed this action in admiralty seeking damages arising from Defendant's alleged negligence. The case was tried without a jury. Based on the testimony at trial and the exhibits submitted in evidence, the Court makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

On the sunny and calm morning of August 28, 1993, Plaintiff set out in his eighteen-foot wooden lobster skiff, ME 9813L, to haul and reset his traps in Potts Harbor. At 7:00 a.m., while at idle speed approximately 30 feet outside of the moorings, Plaintiff hauled his first string, banded the four lobsters he had caught, and placed them in a crate. Then Plaintiff turned around saw, for the first time, Defendant's boat, the SARA BEV, on his port side bearing down at approximately 12 to 15 knots. At that moment, Defendant's boat was approximately sixty feet away. Plaintiff attempted to shift his boat into reverse, but succeeded in pulling the gear shift only as far as neutral before he jumped off the boat to avoid injury from the imminent collision. Plaintiff's chest hit the outboard motor as he jumped over the stern. Immediately thereafter, the SARA BEV collided with ME 9813L on the port side near the bow, shearing off the bow.

Defendant did not see Plaintiff's boat until after the collision. Trial Stipulation No. 2. He was piloting the boat through the channel while his view ahead was completely obscured by the sun's glare through dew on the windshield. He and his two crewmen felt the impact of the collision but thought that they had hit a log. When Defendant turned the SARA BEV around, he and his crew saw Plaintiff's boat and, shortly thereafter, they saw Plaintiff in the water. They returned to the collision site where they retrieved Plaintiff, who was visibly shaken from being in the water and being unable to swim. Defendant and his crew then towed Plaintiff's damaged and partially submerged boat back to shore. Defendant contacted the Department of Marine Resources, and Marine Patrol Officer David S. Mercier responded. MPO Mercier took the parties' statements while another MPO took photographs of both boats.

After the accident, Plaintiff had difficulty continuing his lobstering operation. He received an estimate on the repair of his boat from Michael C. Delrya, the original builder of the boat. Although Delrya thought that the wooden hull could be repaired with fiberglass, he recommended that Plaintiff replace the boat due to the cost and added weight of the fiberglass. The boat's motor was taken to Bath Fuel where it was flushed and started. The motor has not been used since the accident, nor has Plaintiff made any attempt to sell it. While awaiting the resolution of his claim with Defendant's insurer, ITT Hartford, Plaintiff rented boats from others and hauled his traps as frequently as he could. Although Defendant offered on more than one occasion to bring Plaintiff out to haul Plaintiff's traps, Plaintiff did not accept these offers. Plaintiff testified that he lost thirty-six traps after the collision because of his inability to tend to them daily. Within two months of the accident and after learning that Defendant's insurer was not offering an acceptable amount to settle the claim, Plaintiff was able to secure financing to purchase another boat. By the beginning of November, he was able to resume his lobstering on the new boat.

For several months after the accident, Plaintiff had insomnia and nightmares of drowning. The occurrence of these sleep disturbances was nightly in the first few months after the accident but has subsided in recent months.

The parties stipulated prior to trial that Plaintiff lost equipment and gear (excluding the boat and motor) in the amount of $5,000, that his net loss of earnings from August 28, 1993 to September 30, 1993 was $9,850, and his net loss of earnings from October 1 to October 31 was $7,851.90. Trial Stipulation Nos. 13, 15, and 16. The parties also stipu-

lated to an average value of $38 for a lobster trap. Michael Delrya estimated a cost of $7,000 to replace the hull and shelter of the boat. Exhibit 30 and testimony.

## II. ANALYSIS

The parties are in agreement that Defendant was at fault in the collision in failing to maintain an adequate lookout under the circumstances and failing to make other provisions relative to insuring that he, or others of his crew, could see all about his horizon. Trial Stipulation Nos. 3 and 4. The parties fail to agree, however, whether Plaintiff was also partially responsible and, if so, to what extent. They also dispute whether Plaintiff failed to mitigate his damages and whether the replacement of his boat constituted a betterment.

### A. COMPARATIVE NEGLIGENCE

The parties agreed at trial that the applicable standards of conduct governing this accident are set out in the Inland Navigational Rules (INR). 33 U.S.C. §§ 2001–2073. Defendant has already stipulated that he was in violation of INR 5, 33 U.S.C. § 2005, also known as "the lookout rule."[1] He also acknowledges that the two boats were in a crossing situation, the SARA BEV was the burdened vessel, and Plaintiff's boat was the privileged vessel, giving the latter the right-of-way. Trial Stipulation Nos. 5 and 6. Defendant alleges, however, that Plaintiff is equally responsible for the collision by failing to keep a lookout and failing to take action to avoid the collision.

Comparative negligence rules apply in admiralty cases. The First Circuit has specifically noted this in a case where, like the instant case, neither vessel maintained a proper lookout under Rule 5. *LoVuolo v. Gunning*, 925 F.2d 22, 26 (1st Cir.1991) ("It is well-settled that contributory negligence may result from a failure to maintain a sufficient and proper lookout." (citation omitted)). The Supreme Court held in *United States v. Reliable Transfer Co.*, 421 U.S. 397,

411, 95 S.Ct. 1708, 1715–16, 44 L.Ed.2d 251 (1975), that liability for damages in a maritime collision:

> is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.

*Id.*

The Supreme Court established a rule of negligence *per se* for violation of navigational regulations in *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1873):

> The liability for damages is upon the ship or ships whose fault caused the injury. But when ... a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute.

*Id.* at 136. The First Circuit followed this approach recently in *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 436 (1st Cir.1992). The court emphasized that the *"Pennsylvania* Rule" does not establish fault but "serves solely to shift the burden of proof on the issue of causation once a claimant has established that a vessel has violated a statute or regulation." *Id.*

Plaintiff's argument that the early Second Circuit case, *The Stifinder*, 275 F. 271 (2d Cir.1921), serves as authority for a finding of no comparative negligence is not persuasive. In that case, there was no allegation that the privileged vessel failed to maintain adequate lookout. Rather, the court rejected the claim

---

**1.** The rule states:

Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

33 U.S.C. § 2005.

that the privileged vessel was partly responsible for the collision for failing to maneuver in a way to avoid the collision. The court held that it was unreasonable to hold the boat responsible for failing to act "in the agony of collision" that occurred within forty seconds of the sighting. *Id.* at 276. In that case, the full responsibility fell on the other ship, which *had* failed to maintain adequate lookout. *Id.* at 274, 277.

■ This Court finds that Plaintiff did violate INR 5 by failing to maintain an adequate lookout in that he was occupied with his lobstering and aware that the hauling motor effectively drowned out the noise of any nearby vessels. He was aware that there were other boats in the general vicinity yet failed to survey the area more often. Had he seen Defendant's boat earlier, Plaintiff might have been able to avoid the collision. Plaintiff did not violate any other rules, however. As the privileged vessel, he was required to maintain his course and speed. INR 17(a), 33 U.S.C. § 2017(a). While INR 17 also requires that he take "such action as will best avoid a collision," no evidence was presented that any such action was feasible at the time Plaintiff saw the SARA BEV. The expert testimony of MPO Mercier was that, at idle speed, Plaintiff's maneuverability was greatly restricted and, given that approximately three seconds lapsed between Plaintiff's first observation of the SARA BEV and impact, there is nothing more that Plaintiff could have done to prevent the accident.

■ Plaintiff's negligence, however, is far less than that of Defendant. Plaintiff had a right to presume that other boats would perform their duty to avoid a collision. *The Sagamore*, 247 F. 743, 751 (1st Cir.1917). He was proceeding at only idle speed while engaging in the pulling, setting, and banding involved with lobstering. Defendant, on the other hand, was proceeding through this same channel at a speed of at least 12 knots, knowing that his forward visibility was completely obscured and that his crewmen were occupied with other responsibilities.

Therefore, this Court has determined that Defendant was 95% at fault and that Plaintiff was 5% at fault, and damages will be reduced accordingly.

## B. DAMAGES

■ The parties presented conflicting testimony regarding the cost of repairing or replacing the damaged boat, as well as whether Plaintiff failed to mitigate his damages. Michael Delrya estimated a cost of $7,000 to replace the hull and shelter of the boat. Exhibit No. 30 and testimony.[2] The Court concludes that Plaintiff was entitled to replace the boat considering the vigorous use to which the vessel would be put in Plaintiff's year-round fishing business. The cost of replacing the damaged gear and other boat peripherals is stipulated to be $5,000.

Trial Stipulation

No. 13. The Court finds, however, that Plaintiff has not demonstrated a need to replace the motor. While the Court realizes that Plaintiff was uncomfortable using the previously submerged motor, the fact remains that Bath Fuel was able to flush the motor and run it for one hour. Moreover, Plaintiff made no attempt to mitigate any loss by salvaging, trading, or selling the old motor.

■ Plaintiff also alleges that he lost thirty-six lobster traps, or twelve "triples," as a result of not tending the traps after the accident. However, he also admitted on cross-examination that he usually loses fifteen to twenty traps each year anyway due to their being dragged into deeper water and other causes. He did not adjust his damages for that consideration. Accordingly, the Court finds that due to the collision Plaintiff lost twenty-one traps, or seven triples, the value of which is $798.00. The Court accepts the stipulated sums of $17,701 as the amount of net wages lost by Plaintiff. This Court is satisfied with Plaintiff's efforts to mitigate his damages by renting other's boats and seeking compensation from Defendant's in-

---

**2.** Neither party produced any evidence as to the salvage value, if any, of the unrepaired hull and shelter.

surance. It would have taken several weeks to fully repair the boat, since it needed to dry completely before any repairs could be made. It is, in fact, quite remarkable that Plaintiff was able to secure financing and purchase a replacement boat as quickly as he did. Finally, this Court awards Plaintiff $10,000 for his emotional distress and pain and suffering associated with the accident.

Accordingly, it is hereby *ORDERED* that judgment be entered in favor of Ronald Fitzgerald in the amount of $40,499, reduced by $2,025 due to his own negligence, for a final recoverable amount of Thirty–Eight Thousand Four–Hundred Seventy–Four Dollars ($38,474.00) for replacement of the damaged boat and equipment; lost traps and earnings; and emotional distress and pain and suffering.