Wayne Scott SMITH,

v.

**William E. HAGGERTY, Administrator of the Estate of William B. REEDER, Deceased.**

**Marcy A. Fahnestock, Andrew T. Lints, and Thomas Lints.**

v.

**William B. Reeder, deceased, by and through William E. Haggerty, as Administrator of the Estate of William B. Reeder; Sondra L. Reeder; and David Glenlast.**

**No. CIV. A. 01–CV–1911.**

United States District Court, E.D. Pennsylvania.

Oct. 3, 2001.

Melvin H. Hess, Anita J. Hanna, Gary Francis Seitz, Philadelphia, PA, for Plaintiffs.

Joseph B. Mayers, Lisa G. Faden, Blue Bell, PA, for Defendants William B. Reeder & Sondra L. Reeder.

J. Michael Flanagan, Lancaster, PA, for defendant Glenlast.

### OPINION AND ORDER

VAN ANTWERPEN, Senior District Judge.

## I. Introduction

Plaintiffs Marcy Fahnestock, Thomas Lints, and Andrew Lints filed suit on April 12, 2000 to recover for personal injuries

arising from a recreational boating accident on the Susquehanna River on May 31, 1998. The initial complaint, filed on April 12, 2000, named Sondra Reeder and William Reeder,[1] deceased, as defendants. On June 26, 2000, Plaintiffs filed a First Amended Complaint naming, in addition to Sondra and William Reeder, their son-in-law, David Glenlast as a defendant. Defendants' Motion to Dismiss the First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and to Strike claims pursuant to Fed.R.Civ.P. 12(f) was denied by this Court by Order of August 7, 2000.

Defendants joined Thomas Lints as an additional defendant on the claims brought by Andrew Lints and Marcy Fahnestock. Subsequently, the matter was consolidated with a related cause of action filed by Wayne Scott Smith against William Reeder.

Before this Court are two motions for summary judgment, filed by Defendants David Glenlast and the Reeders respectively. Defendant Glenlast filed a Motion for Summary Judgment on July 16, 2001 with respect to the claims against him. The Reeders filed a Motion for Summary Judgment on August 22, 2001 with respect to the claims against Sondra Reeder. The Memorandum in Support of the motion also states that Sondra Reeder has been appointed executrix of the estate of her late husband, replacing the initial administrator, William E. Haggerty. The Reeders also move to dismiss Plaintiffs' claims for punitive damages and attorney's fees.[2]

The accident occurred on the navigable waters of the United States. Therefore we have admiralty jurisdiction pursuant to 28 U.S.C. § 1333.

For the reasons stated herein, Defendant Glenlast's Motion for Summary Judgment will be granted, and Defendant Reeders' Motion for Summary Judgment will be granted in part and denied in part. We find that neither Sondra Reeder nor David Glenlast owed any duty of care to the Plaintiffs, and thus both motions are granted with respect to the claims against them in their personal capacities. However, the Reeders' request that the claims for punitive damages be dismissed is denied at this time because facts at trial could warrant an award of punitive damages. The Reeders' motion to dismiss the claims for attorney's fees will be granted.

## II. Standard of Review

 The court shall render summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("*Anderson I*"). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See id.* at 248, 106 S.Ct.

---

1. William Reeder died from complications of cancer on June 2, 1999.

2. By Order of September 6, 2001, we granted Plaintiffs' request for an extension in the time for discovery and ordered that discovery must be completed by January 1, 2002. Plaintiffs filed their Memorandum of Law in Response to Defendant Reeders' Motion For Summary Judgment on September 7, 2001. There has been no request for additional discovery to respond to either summary judgment motion and for purposes of the summary judgment motions at hand, we deem any request for an extension of time to complete discovery to have been waived.

2505. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrates the absence of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *See id.* at 321 n. 3, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson I*, 477 U.S. at 249, 106 S.Ct. 2505.

### III. Factual Background

This matter arises out of a May 31, 1998 motorboat accident involving two recreational motorboats on the Susquehanna River in Lacaster County, Pennsylvania. Plaintiff's First Amended Complaint ("Comp.") at ¶¶ 12 and 16. At the time of the accident, Mr. Reeder was the owner and sole operator a 19–foot Starcraft Crusier boat. Comp. at ¶¶ 14, 94, and 103; Deposition Testimony of Sondra Reeder ("N.T.Reeder") at 12, 14, 29, 41; Deposition Testimony of Pa. Fish and Boat Commission Officer, Leon Creyer ("N.T.Creyer") at 27; Deposition Testimony of David Glenlast ("N.T.D.Glenlast") at 18. Immediately prior to and at the time of the accident, the Reeder's daughter, Chandra Glenlast was being towed from the Reeder boat for the purposes of water skiing. Deposition Testimony of Chandra Glenlast ("N.T. C. Glenlast") at 25–27; N.T. D. Glenlast at 18; Comp. at ¶¶ 15, 19.

Plaintiff Thomas Lints was operating his 19–foot 1988 Citation 190 XL. Comp at ¶¶ 16, 18. Plaintiffs Andrew Lints (Thomas Lints' son) and Marcy Fahnestock were riding on the Lints boat as passengers at the time of the accident. Comp. at ¶ 16. Both boats were on the Susquehanna River in the vicinity of Weiss Island. Comp. at ¶¶ 18–19, N.T. Creyer at pp. 19–20. Just as Mr. Reeder engaged the throttle and began to accelerate and tow the water skier, Chandra Glenlast, the Reeder boat and Lints boat collided. As a result of this collision, Plaintiffs Marcy Fahnestock and Drew Lints suffered serious injuries. Comp. at ¶¶ 24–25. Plaintiff Thomas Lints is claiming damages for negligent infliction of emotional distress. Comp. at Counts V, VIII and XI.

### IV. Discussion

Plaintiffs' theory of liability against Defendants Sondra Reeder and David Glenlast, passengers in the Reeder boat, is that they were obligated, under the Inland Navigation Rules, 33 U.S.C. §§ 2001, *et. seq.* to serve as lookouts and watch for other boats to avoid the collision, and that failure to perform this duty constitutes negligence for which they are liable. Plaintiffs' Memorandum of Law in Opposition to Defendant Reeders' Motion for Summary Judgment, filed September 7, 2001, at 2–3. Defendants Sondra Reeder and David Glenlast contend that under maritime law and Pennsylvania statutory, regulatory and common law, no such duty exists

Plaintffs further claim that they are entitled to punitive damages under a "reckless indifference to the rights of others" standard pursuant to *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088

(1985), *rev'd on other grounds*, 515 Pa. 377, 528 A.2d 947 (1985) (plurality opinion). *Id.* at 12. Finally, Plaintiff's allege that they are entitled to attorneys fees because Defendants acted in bad faith. *Id.* at 15, citing *Sosebee v. Rath*, 893 F.2d 54 (3d Cir.1990).

## A. Applicable Law

 Substantive maritime law applies to a cause of action brought in admiralty. *Fedorczyk v. Caribbean Cruise Lines*, 82 F.3d 69, 73 (3rd Cir.1996), citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). "Although the corpus of admiralty law is federal in the sense that it derives from the implications of Article III evolved by the courts, to claim that all enforced rights pertaining to matters maritime are rooted in federal law is a destructive oversimplification of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce. It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope." *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 373, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (internal citations omitted). In the field of maritime torts, the federal government has left "much regulatory power to the states." *Id.* at 374, 79 S.Ct. 468, quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S.Ct. 368, 99 L.Ed. 337 (1955). "State law may supplement maritime law when maritime law is silent or where a local matter is at issue, but state law may not be applied where it would conflict with maritime law." *Floyd v. Lykes Bros. Steamship Co., Inc.*, 844 F.2d 1044, 1047 (3d Cir.1988), citing *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir.1986). Fed-eral maritime law incorporates or adopts state law except where a significant conflict with federal policy exists. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 627–628 (3d Cir.1994), *aff'd*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).

 A conflict between state and federal law exists in admiralty law when state law prejudices the characteristic features of federal maritime law or interferes with "the proper harmony and uniformity of that law." *Id* at 626, quoting *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). The Third Circuit views maritime preemption doctrine to be basically the same as preemption doctrine in non-maritime cases. *Id.* at 629. "Stated succinctly, in the absence of an express statement by Congress (express preemption), (implied) preemption could occur either where Congress intended that federal law occupy the field (field preemption) or where there is an actual conflict between state and federal law such that: (1) compliance with both federal and state law is impossible; or (2) state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* citing *California v. ARC America Corp.*, 490 U.S. 93, 100, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989)

 Since this accident occurred on the navigable waters of the United States, the Inland Navigation Rules, 33 U.S.C. §§ 2001 *et. seq.*, obviously apply. In addition to these federal "Rules of the Road," both parties cite to Pennsylvania regulations (e.g. 58 Pa.Code § 109.4. Water skiing, aquaplaning, kite skiing and similar activities) in support of their positions. We find that there is nothing in the relevant Pennsylvania regulations applicable to the case at hand that conflicts with the applicable federal statutes or general mari-

time law and that Congress did not, either expressly or impliedly, preempt state regulations such as the ones at issue here. Furthermore, we find that these state rules concern an important local matter, the regulation and safety of recreational boating in state territorial waters. As such, we give Pennsylvania law full force and effect in this admiralty proceeding.

## B. Duty of a Passenger on a Recreational Motorboat to Serve as Lookout

The essence of Plaintiffs' claim against Defendants Sondra Reeder and David Glenlast is that the Reeder boat maintained an inadequate lookout and that the passengers in the boat are liable for this failure. We find, for the reasons stated below, that while having a separate lookout, in addition to the driver or operator of the boat, may be required in many situations, there is no *per se* prohibition against the boat operator serving as his or her own lookout, particularly in the case of a recreational motorboat which is less than twenty feet long. Furthermore, even if the boat were required to have a separate lookout, the failure would be the fault of the boat, the person in charge of the boat, or the boat's owner, and that liability cannot attach to unpaid, recreational passengers who theoretically could have served as lookout.

### 1. Operator as Lookout

Title 22, United States Code, Section 2005 (Rule 5), reads "Look-out. Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances so as to make a full appraisal of the situation and of the risk of collision." Plaintiffs maintain that this rule mandates that a separate person serve as the look-out and that a nineteen-foot recreational motorboat may not be operated except where there are at least two people on board.

There is no requirement that a boat maintain a separate look-out in addition to the person actually operating the boat, particularly a small vessel such as the one in question. In *Capt'n Mark v. Sea Fever Corp.*, 692 F.2d 163 (1st Cir. 1982), a small fishing vessel, the John David, was hit by another boat, the Sea Fever, under uncertain circumstances. The District Court found that the Sea Fever was at fault for violating a number of navigational rules, but the question remained whether the John David was at fault for failing to maintain a proper lookout. *Id.* at 166. The operators of the Sea Fever contended that a proper lookout was one as far forward and low down as possible with no other duties. *Id.* The First Circuit, noting that the adequacy of the lookout must be evaluated realistically in light of all the circumstances, held that it would be too "onerous and unrealistic" to require that, as a matter of law, small fishing vessels with limited crew had to post a lookout with no other duties. *Id.*. Similarly, we believe that to mandate that a small pleasure craft such as the Reeder boat is required, as a matter of law, to post a separate lookout would place an "onerous and unrealistic" burden on recreational boaters everywhere.

In *Fitzgerald v. Merryman*, 865 F.Supp. 9 (D.Maine 1994), a small vessel, an eighteen-foot wooden lobster skiff, with only the operator on board was struck by another boat while the lobsterman was hauling and resetting his traps. *Id.* at 10. Finding the other boat to be at fault, the Court nonetheless reduced recovery by five percent because the lobsterman failed to maintain an adequate lookout. *Id.* at 12. Importantly, the Court found the lobsterman to have failed in his duties be-

cause he was distracted in hauling and resetting his traps, and nowhere did the Court find fault with the simple fact that a separate person was not on board. The clear implication of this decision is that the operator of a small vessel is indeed capable of maintaining an adequate lookout, but that this particular operator became too distracted to fulfill his duties properly.

In *Andrews v. United States*, 801 F.2d 644, the Third Circuit had an opportunity to consider the issue not only of whether the boat operator may perform the lookout duties, but whether passengers in a recreational motorboat could be held liable for their failure to perform this duty. In *Andrews*, two recreational motorboats were driven over a dam, causing serious injuries to passengers on board. While finding that the boat operators were negligent in operating the boat and failing to maintain a proper lookout, the District Court denied recovery to the passengers based on their own negligence. *Id.* at 649–650. The Third Circuit reversed stating that "[w]here the vessel involved is the size of the one here and there is nothing to block the operator's vision ahead of the boat, we perceive no basis for holding that someone in addition must be designated as a lookout." *Id.* at 650. The Court went on to state that "It follows that passengers in such a vessel who are without notice that the operator is being inattentive are no more obliged to maintain a lookout for themselves than are similarly situated passengers in an automobile." Thus, in light of the Third Circuit's holding in *Andrews*, we find that there is no rule which prohibits the operator of a recreational motor-

boat from serving as lookout or which places liability on the passengers for the operator's inadequate lookout.

Plaintiffs, in attempting to distinguish *Andrews*, make much of the fact that when a motorboat begins to tow a water skier, the bow of the boat lifts out of the water.[3] According to the Plaintiffs, this puts the passengers on notice that the operator is being inattentive and thus makes *Andrews* inapplicable. Plaintiffs' Response to Defendant Glenlast's Motion for Summary Judgment, filed July 31, 2001, at 8. The simple fact that the bow of a boat rises out of the water does not put the passengers on notice that the operator is being "inattentive." First of all, there is nothing in the record that the passengers had any indication that Mr. Reeder did not or would not conduct a sufficient check of the surrounding area before engaging the throttle. Also, Mr. Reeder's statements to the insurance company merely indicate that he could not see immediately in front of him and not that his entire vision was blocked. Plaintiffs have completely failed to demonstrate that any failure in Mr. Reeder's line of sight had any impact on his ability to see the Lints boat. Finally, we fail to see how, if the operator's vision was blocked by the rising bow, the passengers could possibly hope to see what Mr. Reeder could not. To see over the raised bow, the passengers would need either to stand on something or climb out onto the bow of the boat just as it was rapidly accelerating, two obviously dangerous alternatives. *See* 58 Pa.Code § 105.3 ("Unacceptable boating practices. It is unlawful to ... (2)Operate a motorboat—less

---

**3.** In establishing this fact, Plaintiffs cite only to a recorded interview with Mr. Reeder, deceased, in which he told an insurance investigator about this phenomenon. We will not decide the issue of whether this statement would be admissible or whether it violates Pennsylvania's Dead Man's Act (and whether said act would apply in this admiralty case) or the hearsay rule. For purposes of these summary judgment motions, we will simply assume that the bow of a motorboat does indeed rise out of the water in towing the skier out of the water.

than 20 feet in length—at greater than slow, minimum height swell speed while a person is standing on or in the boat.")

Furthermore, Pennsylvania Fish and Boat Commission regulations do not prevent the operator of a recreational motorboat from serving as a lookout. In fact, the Commission's Boating Handbook states that "Boat operators must maintain a proper lookout at all times when operating a boat. Alert boaters avoid being surprised by scanning the water on all sides for swimmers, other boats and obstructions ... Collisions can be avoided if every boat operator maintains a proper lookout." Pennsylvania Fish and Boat Commission, Pennsylvania Boating Handbook at 21 (2001) (available at <http://sites. state. pa.us/Fish/01boath/fullbook.pdf>). The official boating handbook given out by the State of Pennsylvania thus instructs boaters that the *operators* should maintain proper lookout.

Regulations of boats towing a water skier also require a "competent observer" on board in addition to the operator of the boat. 58 Pa.Code § 109.4(c)(1). Importantly, the regulation does not state that there must be a competent observer in addition to the operator and a lookout, despite the fact that a duty to maintain a proper lookout also arises under the very same subpart of the code. *See* 58 Pa.Code § 103.4. The interplay of the regulations and the handbook leads to only one logical conclusion: the operator of a boat towing a water skier may serve the role of lookout and there is no requirement that a separate person fulfill this function.

We hold that neither the Inland Navigation Rules, Pennsylvania law, nor general maritime principles create an obligation

for small recreational motorboats to employ a separate person as lookout in addition to the boat operator. As such, there can be no merit to the argument that Defendants Sondra Reeder and David Glenlast were under an obligation to serve as lookouts, especially without any instruction to do so from the boat operator, William Reeder.[4]

## 2. The Duties of a Competent Observer

On the afternoon of May 31, 1998, Defendants Sondra Reeder and David Glenlast were both seated behind William Reeder, looking backwards at the water skier, Chandra Glenlast. N.T. Reeder at 38–39; N.T. D.Glenlast at 18, 33. Under 58 Pa.Code § 109.4(c)(1) it is unlawful to operate a boat towing a water skier unless "there is at least one competent observer in the boat in addition to the operator of the boat. The observer shall be positioned in the boat to observe the progress of the person being towed." According to Defendant Glenlast, he was watching his wife ski in order to be able to signal to the boat operator if she fell or was in danger. N.T. D. Glenlast at 34–35.

The passengers on the Reeder boat were fulfilling a legal obligation under Pennsylvania Fish and Boat Commission regulations. A competent observer is defined as "a person who has the ability to assess when a skier is in trouble, knows and understands the water skiing signals and is capable of helping a skier." 58 Pa.Code § 109.4

The sole duty of a person acting as a competent observer under § 109.4 is to watch out for the safety of the skier. No-

4. Mr. Reeder never delegated the lookout duty to anyone on board his boat. *See* N.T. C. Glenlast at 36–37; N.T. D. Glenlast at 27. Plaintiffs point to nothing in the record which contradicts this testimony for this fact has gone uncontroverted throughout the period of discovery.

where does the law place the burden on a competent observer to watch out for other boats. Section § 109.4(c) requires the observer to be "positioned in the boat to observe the progress of the person being towed." Observers such as Defendants Sondra Reeder and David Glenlast are required to look backwards at the skier and as such cannot be required to watch for other boats in front.

The fact that Defendants Sondra Reeder and David Glenlast were performing the competent observer duties obviates any duty they had to serve as lookout.[5] It would be logically absurd to impose liability on one who, fulfilling one legal obligation, is prevented from properly fulfilling another. Under Plaintiffs' theory, a seaman who, for example, is assisting in repairing the engine below deck could be found liable for failing to adequately perform the lookout duty even though he could not possibly see any other ships from the engine room. In addition, cases that hold that a vessel should have positioned a separate lookout also require that this lookout have no other duties. *See, e.g.* *United States v. The Holland,* 151 F.Supp. 772, 777 (D.Md. 1957), citing *The Genesee Chief,* 52 U.S. (12 How.) 443, 462 (1851); *Oil Transfer Corp. v. Diesel Tanker F.A. Verdon, Inc.,* 192 F.Supp. 245 (S.D.N.Y. 1960), citing *The Koyei Maru,* 96 F.2d 652, 654 (9th Cir.1938).

Plaintiffs first argue that a separate lookout must be on board because the boat operator is not sufficient as he is engaged in other duties. However, they then attempt to place liability on Defendants Sondra Reeder and David Glenlast because they were not serving the lookout function while they were engaged as competent observers watching out for the safety of the skier. Placing the lookout duty on the boat operator makes sense as William Reeder was the only one looking forward whereas Sondra Reeder and David Glenlast were under a duty to look backwards. Under Plaintiffs' theory, we would have to find as a matter of law that Defendants Sondra Reeder and David Glenlast should have forsaken the safety of a close family member and their legal obligation to watch out for the skier's interests. We do not so find and we will not require that water ski observers grow eyes in the back of their heads. We hold that passengers on a motorboat towing a water skier who are serving the duty of competent observer are under no obligation to serve as lookout.

### 3. Duty and Liability

If we do find negligence in the operation of the Reeder boat or the failure to post a separate lookout,[6] there is absolutely no support for holding Defendants Sondra Reeder and David Glenlast personally liable for this failure.

The Pennsylvania statutes and regulations applicable here place all responsibility on the operator and owner of the boat. For example, 30 Pa.C.S. § 5501 makes it unlawful to *operate* a watercraft in a negligent or reckless fashion, and § 5504 pro-

---

5. Officer Leon Creyer of the Pennsylvania Fish and Boat Commission testified that the sole purpose of the competent observer is to watch out for the safety of the water skier. N.T. Creyer at 29 ("A competent observer would be someone who ... Basically, knows there [sic] water skiing hand signals, would be able to assist a fallen skier, would notify the operator of the skier's intention. The sole purpose [is to] watch the skier.")

6. While not now before the Court, we note that the issue of negligence may require an apportioning fault between the Reeder boat and the Lints boat in light of 58 Pa.Code § 105.3(8) ("Unacceptable boating practices. It is unlawful to ... (8) Operate within 100 feet of a waterskier being towed by another boat").

vides for the joint and several liability of the owners of the boat. The Pennsylvania Fish and Boat Commission has provided that, unless circumstances clearly indicate otherwise, "the *operator* of a boat shall be responsible for compliance with this subpart." 58 Pa.Code § 91.3 (*emphasis* added).

Plaintiffs cite to the Inland Navigation Rules which place the duty on the *vessel* to maintain a proper lookout, thus implying that the fault of the vessel places liability on all passengers occupying said vessel. *See* 33 U.S.C. § 2005. However, civil penalties for violations of the Inland Navigation Rules are provided for in 33 U.S.C. § 2072. Civil penalties may be assessed against whoever operates a vessel in violation of the Rules (§ 2072(a)) or against the vessel itself (§ 2072(b)). Plaintiffs have completely failed to cite one single case or statute which supports their position that passengers on a vessel can be held liable for the vessel's failures or negligence. This is not the least bit surprising as no such support exists.

"By the common law, the owners of a vessel are responsible for its torts. By the maritime law, the vessel, as well as the owners, is liable to the party injured for damages caused by its torts. The law is well settled, in conformity with the general maritime law, that the ship itself is to be treated in some sense as a principal, and as directly liable for the negligence of anyone who is lawfully in possession." 70 Am.Jur.2d Shipping § 435 (1987), citing, *inter alia*, *The Eugene F. Moran*, 212 U.S. 466, 473, 29 S.Ct. 339, 53 L.Ed. 600 (1909); *The China*, 74 U.S. (7 Wall.) 53, 19 L.Ed. 67 (1868). "Such personification of the vessel, treating it as a juristic person whose acts and omissions, although brought about by her personnel, are personal acts of the ship for which, as a juristic person, she is legally responsible." *Canadian Aviator, Ltd. v. United States*, 324 U.S. 215, 224, 65 S.Ct. 639, 89 L.Ed. 901 (1945), quoted in *Ohio Valley Engineering Co. v. Barges Ove 102 & 103*, 214 F.Supp. 784, 788 (E.D.La.1963). Thus there can be no doubt that statutes placing liability upon a vessel do not create an umbrella of liability over all who may occupy her but merely follow the long-standing legal tradition that, in maritime law, a vessel can be treated as a legal person. Plaintiffs' argument to the contrary lacks merit and runs contrary to innumerable cases placing liability upon the vessel itself. *See, e.g. Tug Ocean Queen v. The Tanker Four Lakes*, 398 F.Supp. 1062, 1069 (S.D.N.Y.1974) ("the tug is liable for the failure to have a proper lookout ..."); *United States v. The Holland*, 151 F.Supp. at 776 ("the Smith herself was at fault"); *Id.* at 777 ("The Nyland was at fault for proceeding through the fairway at night without a proper lookout"); *Norscot Shipping Co. v. Steamship President Harrison*, 308 F.Supp. 1100, 1106 (E.D.Pa.1970) ("Failure to have a lookout on a vessel's bow is a statutory fault and imposes on the guilty vessel the burden of showing beyond a reasonable doubt that the fault could not have contributed to the collision."); *Rosado v. Pilot Boat No. 1*, 304 F.Supp. 49, 55 (D.Puerto Rico 1969) ("Since Pilot Boat No. 1 had an improper lookout ... it was in statutory fault."); *Oil Transfer Corp. v. Diesel Tanker F.A. Verdon, Inc.*, 192 F.Supp. at 247 ("... the Verdon was in violation")

■ The numerous cases construing the duty to maintain a proper lookout and general duties of seaworthiness vary widely in their facts and circumstances. Liability has been placed upon the vessel itself, the operator[7], the captain[8], the owner[9],

---

**7.** *See, e.g. Bremmer v. Shedd*, 467 F.Supp. 261, 266 (W.D.Pa.1979) ("... the basic duty of

and the charterer,[10] as well as designated lookouts who performed the job negligently.[11] However, a common thread connecting all these cases is that not a single one has imposed a duty on passengers or others on a vessel who could theoretically have performed a required task. It is the duty of the captain or someone else in charge of navigation to station a lookout where one is necessary. *Nicholes v. M/V Maya*, 949 F.Supp. at 398, citing *The Vedamore*, 137 F. 844 (4th Cir.1905).

 What Plaintiffs are essentially asking this Court to do is to create a new maritime duty where none has existed before. "Although common law originated in the customs on land ... maritime law derives from customs at sea and therefore constitutes a separate and distinct body of law ... Only when there are no clear precedents in the law of the sea may courts look to the law prevailing on the land." *Floyd v. Lykes Bros. Steamship Co.*, 844 F.2d at 1046 (internal citations omitted). Having determined that there is no basis in the law of the sea for placing the lookout duty upon boat passengers, we turn to the common law and the law of the land for guidance. The most closely analogous situation to the one at hand is passen-

gers in an automobile, and in determining the issue of boat passengers' duty to maintain a lookout, the Third Circuit employed this very same analogy in *Andrews*, 801 F.2d at 650. In light of the Third Circuit's use of the automobile analogy and the rule that passengers in an automobile are under no duty to look out for dangers (*Bastian v. Baltimore & Ohio R. Co.*, 144 F.2d 120 (3d Cir.1944), cited in *Andrews*, 801 F.2d at 650), we likewise hold that Defendants Sondra Reeder and David Glenlast cannot be held liable for failure to maintain a proper lookout.[12] To hold otherwise would run contrary to both the law of the land and the law of the sea.

### C. Punitive Damages

 Plaintiffs demand that punitive damages should be assessed against the Estate of William Reeder. Comp. at Counts I–V. They argue that punitive damages are appropriate under the "reckless indifference to the rights others standard" as set forth in *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985), *rev'd on other grounds*, 515 Pa. 377, 528 A.2d 947 (1985). Defendants contend that punitive damages are not appropriate because there is no showing of a bad motive or a reckless indifference to the interests

---

each operator is to keep a proper lookout ...").

**8.** *See, e.g. Nicholes v. M/V Maya*, 949 F.Supp. 391, 398 (D.S.C.1996) ("the persons in charge of the vessel's navigation are obligated to position a lookout at a point best suited for the purpose ...");

**9.** *See, e.g. Baker v. Raymond International, Inc.*, 656 F.2d 173, 181 (5th Cir.1981) ("Both ship and shipowner are liable to seaman for injuries caused by unseaworthiness."), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982).

**10.** *Reed v. Steamship Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), *rehearing denied* 375 U.S. 872, 84 S.Ct. 27, 11 L.Ed.2d 101, (not followed on other grounds *Baker v.*

*Raymond International, Inc.*, 656 F.2d 173 (5th Cir.1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982))

**11.** *Moran Towing & Trans. Co., Inc. v. City of New York*, 620 F.2d 356, 358 (2d Cir.1980).

**12.** Under Pennsylvania law, passengers in a car owe no duty to third parties who are injured by the driver of the same vehicle. *Clayton v. McCullough*, 448 Pa.Super. 126, 670 A.2d 710, 712 (1996). However, a passenger can be held responsible for his own safety and recovery against a negligent driver of the vehicle could be reduced for the failure to exercise due care. *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970).

of others. Memorandum of Law of Defendants, William B. Reeder, Deceased and Sondra L. Reeder In Support of Motion for Summary Judgment, filed August 22, 2001, at 17. While Defendants may very well be correct that the facts surrounding the collision do not support an award of punitive damages, we find that this summary judgment proceeding is not the appropriate venue to determine whether Plaintiffs may be entitled to punitive damages and that facts at trial may support such an award. Accordingly, Defendants' Motion for Summary Judgment on the punitive damages claims will be denied.[13]

### D. Attorney's Fees

 "As a general matter, attorney's fees are not available in admiralty cases unless the court determines in its equitable discretion that one party has acted in bad faith." *Sosebee v. Rath,* 893 F.2d 54, 55 (3d Cir.1990), citing *F.D. Rich Co. v. United States Ex Rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). To this point, we find that neither party has demonstrated bad faith at any point in the legal process. Furthermore, Plaintiffs have completely failed to point to anything in the record that indicates pre-litigation bad faith on the part of the Defendants other than the blanket assertion that the "Reeders demonstrated a reckless indifference to the safety of others in their vicinity." Plaintiffs' Memorandum of Law in Opposition to Defendant Reeders' Motion for Summary Judgment at 15. While Plaintiffs are correct in pointing out that a court sitting in admiralty is authorized to grant equitable relief (*Vaughan v. Atkinson,* 369

U.S. 527, 530–531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962)), after consulting the record and construing all ambiguities, inferences, and disputes in the light most favorable to Plaintiffs, we find that there is absolutely no indication of bad faith on the part of either Plaintiffs or Defendants and that equity demands that, in the instant case, the parties should bear their own counsel fees.[14]

### V. Conclusion

Under the Inland Navigational Rules, Pennsylvania law, and general maritime principles, there is no set duty for passengers on a small recreational motorboat towing a water skier to serve as lookouts. Accordingly, Defendants Sondra Reeder and David Glenlast owed no duty to Plaintiffs and the claims against them must be dismissed.

Triable issues of fact exist with regards to the punitive damages claims against William Reeder, deceased.

Finally, there is no indication at this time of bad faith which would warrant the award of attorney's fees in this admiralty proceeding. Accordingly, Plaintiffs' request for attorney's fees must be denied, without prejudice if future developments warrant such an award.

Federal Rule of Civil Procedure 56(d) provides that if summary judgment is not rendered "upon the whole case or for all the relief asked and a trial is necessary," the court shall, if practicable, ascertain what facts exist without substantial controversy.

---

**13.** Plaintiffs have also claimed punitive damages against Defendant Sondra Reeder in her personal capacity and against Defendant David Glenlast. These claims are, of course, dismissed with the rest of the counts against Defendants Sondra Reeder and David Glenlast.

**14.** All parties are reminded that this opinion and order does not put an end to the litigation and that, should either party demonstrate bad faith, attorney's fees may be awarded as we see fit in the exercise of our discretion.

In a suit that involved multiple parties or in which more than one claim for relief is presented, a district court "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," but the court may only do so "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed R. Civ. P. 54(b). Final judgment under this rule is not to be entered routinely, *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980); instead, the court must exercise its discretion "in the interests of sound judicial administration." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 100 L.Ed. 1297 (1956).

■ In order to enter partial final judgment, the court must first determine that it is "dealing with a final judgment." *Curtiss–Wright Corp.*, 446 U.S. at 7, 100 S.Ct. 1460. It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is an "ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.*

■ Next, the court must determine whether there is any reason for delaying entry of final judgment. The court must balance the interests of "sound judicial administration" and the equities involved, i.e., justice to the litigants. *Curtiss–Wright*, 446 U.S. at 2, 100 S.Ct. 1460; *see also Carter v. City of Philadelphia*, 181 F.3d 339, 346 (3d Cir.1999); *Waldorf v. Shuta*, 142 F.3d 601, 608 (3d Cir.1998). As the Third Circuit has stated, "[t]he rule attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Allis–Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 363 (3d Cir.1975).

■ In determining whether there are "just reasons for delay," the court should consider "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Carter*, 181 F.3d at 346, quoting *Curtiss–Wright*, 446 U.S. at 7, 100 S.Ct. 1460. The *Carter* court noted that "some factual overlap between the issues in [the] appeal and those in a potential future appeal" is permissible, because "[i]t is generally recognized that complete legal or factual distinction is not necessary to 54(b) certification." *Id.* at 346 & n. 20, citing 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2657 at 50–54.

■ Applying these principles to the facts of this case, we enter final judgment under Federal Rule of Civil Procedure 54(b) on all claims against Defendant David L. Glenlast and Defendant Sondra Reeder. This decision is a "judgment" in the sense that it is a decision upon various cognizable claims brought by Plaintiffs for relief. It is "final" in the sense that it is an ultimate disposition of the aforementioned claims. We find that there is no just reason for delaying the entry of judgment with respect to the claims against these defendants. These claims are separable from the claims that remain for adjudication against the Estate of William Reeder. Therefore, we find that the entry of judgment upon the aforementioned claims to be in the interest of sound judicial administration.

An appropriate order follows.

### *ORDER*

AND NOW, this 3rd day of October, 2001, consistent with the foregoing opinion it is hereby ORDERED as follows:

1. Defendant David L. Glenlast's Motion for Summary Judgment, filed July 16, 2001, is GRANTED;

2. JUDGMENT IS ENTERED in favor of Defendant David L. Glenlast;

3. Defendants William B. Reeder's, deceased, and Sondra L. Reeder's Motion for Summary Judgment, filed August 22, 2001, is GRANTED IN PART and DENIED IN PART;

4. JUDGMENT IS ENTERED in favor of Defendant Sondra L. Reeder, in her personal capacity only and not in her capacity as Administrator or Executrix of the Estate of William B. Reeder;

5. Defendants William B. Reeder's, deceased, and Sondra L. Reeder's request to dismiss Plaintiffs' claims for punitive damages is DENIED; and

6. Defendants William B. Reeder's, deceased, and Sondra L. Reeder's request to dismiss Plaintiffs' claims for attorney's fees is GRANTED without prejudice